JUDGE COTE

07 CV 7182

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| FARRAH SHOUKRY, individually and on behalf of all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | 07 CV _____ |
| -against- | : | |
| | : | CLASS ACTION COMPLAINT |
| FISHER-PRICE INC., a Delaware Corporation, and MATTEL, INC., a Delaware Corporation, each separately and on behalf of all other entities similarly situated, | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | | |


RECEIVED
AUG 10 2007
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff, Farrah Shoukry, by and through her undersigned counsel, alleges as follows:

NATURE OF THE ACTION

1. Plaintiff brings this action as a Class Action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who purchased children's toys manufactured, imported, and/or distributed by Fisher-Price, Inc. ("Fisher-Price") or Mattel, Inc. ("Mattel"), and/or purchased other children's toys from entities that purchased said toys for resale from manufacturer Lee Der Industrial Co., a Chinese corporation ("Defendant Class") (collectively referred to as "Defendants"), between April 2007 to the present (the "Relevant Period"), containing lead paint.

2. Despite marketing its toys as safe for young children, Defendants distributed Sesame Street, Dora the Explorer, Go Diego Go, and other children's toys (collectively "Fisher-Price Toys") that have been made using surface paint containing lead which is poisonous to children, especially if ingested.

3. Since April 2007, Defendants Fisher-Price and Mattel have manufactured or caused to be manufactured, marketed and/or distributed approximately one million Fisher-Price

Toys designed for young children, who can be expected to lick, suck, bite on the toys causing chips, and/or ingest the poisonous lead paint. Defendants Fisher-Price and Mattel did so despite clear regulatory prohibitions on the use of lead paint on toys, its knowledge that the ingestion of lead paint by children can cause serious long-term injury, and its representations that its Fisher-Price Toys are safe for children.  On information and belief, other members of the Defendant Class have manufactured or caused to be manufactured, marketed and/or distributed other toys made at the same factory at which the Fisher-Price toys were manufactured, the Lee Der Industrial Co. factory.

4.      The substance lead builds up in a person's system, and even small amounts can remain in the person's system and can add on to other sources of lead leading to potentially harmful levels in a person's system.

5.      On August 2, 2007, the U.S. Consumer Product Safety Commission ("CPSC") announced a voluntary recall of these products. Despite the recall, Defendants have not offered to reimburse Plaintiff or other members of the Plaintiff Class for the costs of the Fisher-Price Toys. Rather, Defendants are only offering to provide vouchers for replacement toys. Defendants' offer is inadequate and fails to compensate Plaintiff and other members of the Plaintiff Class for their damages or make them whole.  Other members of the Defendant Class are not known to have recalled the toys they manufactured or caused to be manufactured, marketed and/or distributed, and which were produced at the Lee Der Industrial Co. factory, and are not known to have offered compensation to Plaintiff or other Class members.

6.      The toys produced at the Lee Der Industrial Co. factory and manufactured or caused to be manufactured, marketed and/or distributed by Defendants and other members of the Defendant Class are not fit for their ordinary use and are of no value to consumers.  Consumers

purchasing them, including Plaintiff, did not receive the benefit of their bargain.

7. As a result of Defendants' negligent and reckless conduct, Plaintiff's children and the children of members of the Plaintiff Class have been exposed to a known hazardous substance. As a result of such exposure, the children are at an increased risk of being poisoned by lead. Early detection of lead poisoning, through medical testing, is made necessary and advisable by the Defendants' manufacturing, marketing, and sale of the Fisher-Price Toys painted with lead pigment.

8. Accordingly, Plaintiff brings this action to recover the actual and compensatory damages for herself and the Class, as well as to recover the costs of diagnostic testing necessary to detect lead poisoning for their children resulting from Defendants and the other members of the Defendant Class's actions.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this nationwide class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different than Defendants. *See* 28 U.S.C. § 1332(d)(2)(A). This Court also has personal jurisdiction over Defendants because they are authorized to do business and in fact do business in this state, and Defendants have sufficient minimum contacts with this state and otherwise intentionally avail themselves of the markets in this state through the promotion, marketing and sale of its products in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in the Southern District of New York because Defendants reside in this District.

PARTIES

11.     Plaintiff Shoukry is and has been a resident of Miami-Dade County Florida during the Relevant Period. Specifically, Plaintiff purchased and owns the Dora Talking Vamonos Van, Product Number G3825, one of the recalled Fisher-Price Toys. Plaintiff purchased this product at the Target store located at 8350 South Dixie Highway, Miami, FL, in the beginning of June 2007. During the Relevant Period, Ms. Shoukry's daughter has played with her recalled Talking Dora Vamanos Van. Plaintiff allowed her child to do so with no expectations that Fisher-Price Toys were painted with a hazardous substance and were seriously harmful to her child's health. Plaintiff was deceived because Defendants could not have represented the toys were safe had they truthfully disclosed that the products were covered in lead paint. Plaintiff would not have purchased the toy had she known her young daughter would be exposed to lead paint. Plaintiff believes that Defendants should be responsible for refunding to her the costs of the Fisher-Price Toys, as well as paying for medical testing for lead poisoning, and the other members of the Defendant Class should likewise be held to account to other members of the Plaintiff Class.

12.     Defendant Fisher-Price is a Delaware Corporation doing business in the state of New York and throughout the entire United States. Fisher-Price sells its products through chain retailers, specialty retailers, wholesalers, and original equipment manufacturer dealers, as well as directly to consumers. Fisher-Price operates throughout the world, including in the United States, Canada, Mexico, Europe, Australia, and Asia Pacific. The company was founded in 1930 and is a wholly owned subsidiary of Mattel, Inc. Fisher-Price's headquarters are in East Aurora, New York. It also maintains offices in Manhattan, within this district. Websites are maintained by them that reach out, *inter alia*, nationally throughout the United States and Canada. Fisher-Price's position in the toy market supports and substantiates their appointment as Defendant

Class representatives.

13.     Defendant Mattel, Inc. wholly owns and operates Defendant Fisher-Price. Mattel is the self-proclaimed worldwide leader in the design, manufacture and marketing of toys and family products. Mattel sells its products through chain retailers, specialty retailers, wholesalers, and original equipment manufacturer dealers, as well as directly to consumers. It manufacturers and distributes such brands as Barbie®, Hot Wheels®, Matchbox®, American Girl®, Radica® and Tyco® R/C, as well as Fisher-Price® brands, including Little People®, Power Wheels® and a wide array of toy lines. With global headquarters in El Segundo, California, Mattel sells products in more than 150 nations. Mattel also maintains offices in Manhattan, within this district. Mattel's position in the toy market supports and substantiates their appointment as Defendant Class representatives.

STATEMENT OF FACTS

A. DEFENDANTS MARKETED FISHER-PRICE TOYS AS "SAFE AND QUALITY PLAYTHINGS" DESPITE THE FACT THEY ARE COATED WITH LEAD PAINT

14.     Defendants' marketing campaign for Fisher-Price Toys is built around assuring parents that its toys are safe for children. Said marketing campaign is shared and likewise made by other members of the Defendant Class.

15.     Plaintiff and other members of the Plaintiff Class were deceived by Defendants' material omissions and failure to state that the toys were coated with lead paint, and purchased the Fisher-Price Toys believing that the toys were safe for their children to play with as children normally do, including with the expectation that their toddlers would place the toys in their mouths while playing. Said material omissions and failures extend to other members of the Defendant Class.

16.     Despite their clear representations that the Fisher-Price Toys were safe for

children, Defendants distributed Fisher-Price Toys manufactured in China, which contain lead paint.

17. The Fisher-Price Toys and those of the other members of the Defendant Class included dolls, figurines, vehicles, buildings, instruments, and other types of toys sold at various retailers throughout the United States between April 2007 and the present for Fisher-Price and at other unknown times for the other members of the Defendant Class. The Fisher-Price Toys and other similar toys of the members of the Defendant Class made at the Lee Der Industrial Co. factory are made with surface paints containing lead. Thus, the very young children who Defendants and other members of the Defendant Class expected to lick, suck, bite on the toys causing chips, and/or ingest the poisonous lead paint on the Fisher-Price Toys and other concerned toys have now been exposed and may be further exposed to poisonous lead that can cause serious long-term injury. Defendants distributed approximately one million of the toys containing lead paint.

B. **DEFENDANTS AND THE OTHER MEMBERS OF THE DEFENDANT CLASS KNEW OR SHOULD HAVE KNOWN OF THE DANGERS OF LEAD PAINT ON CHILDREN'S TOYS**

18. Exposure to lead causes a wide range of health effects that vary from child to child. Even low levels of exposure to lead can result in IQ deficits, learning disabilities, behavioral problems, stunted or slowed growth, and impaired hearing.

19. At increasingly high levels of exposure, a child may suffer kidney damage, become mentally retarded, fall into a coma, and even die from lead poisoning.

20. Lead poisoning has been associated with a significantly increased high school dropout rate, as well as increases in juvenile delinquency and criminal behavior.

21. For these reasons, the Consumer Product Safety Commission ("CPSC") has declared that "[t]oys and other articles intended for use by children that bear 'lead-containing

paint'" are "banned hazardous products."

22.     Accordingly, Defendants and other members of the Defendant Class knew or should have known that manufacturing and distributing Fisher-Price Toys and toys of the other members of the Defendant Class coated with paint containing any amount of lead was dangerous to children and such toys were not safe as Defendants and other members of the Defendant Class represented them to be.

### C. THE RECALLED FISHER-PRICE TOYS

23.     On August 2, 2007, the U.S. Consumer Product Safety Commission ("CPSC") announced a voluntary recall of the Fisher-Price Toys. The CPSC Press Release is attached hereto as Exhibit A.

24.     As part of the recall, Defendants Fisher-Price and Mattel have offered purchasers of these dangerous toys the ability to obtain a voucher for further Fisher-Price products. Other members of the Defendant Class have not yet, to Plaintiff's knowledge, issued such recalls or offered compensation.

25.     Defendants Fisher-Price and Mattel have also recommended that children exposed to the lead paint tainted toys should be taken in for lead poisoning testing.

26.     The relief proposed by Defendants is wholly inadequate. Plaintiff seeks a full refund for all amounts spent on these defective toys by herself and all other Plaintiff Class members similarly situated. The same requested relief should be made available to the Plaintiff Class by the Defendant Class.

27.     Moreover, as a result of Defendants and the Defendant Class's negligent and reckless conduct, Plaintiff's children and children of members of the Plaintiff Class have been exposed to a known hazardous substance. As a result of such exposure, the children are at an

increased risk of being poisoned by lead. Accordingly, Plaintiff also seeks to recover the costs of diagnostic testing necessary to detect lead poisoning to their children resulting from Defendants and the Defendant Class's actions.

28.     Upon information and belief, Defendants failed to timely notify the CPSC and the public of the hazardous nature of its lead painted toys.  The CPSC is currently investigating Defendants' failure to properly disclose the dangers of its products.  This is not the first occasion in which Defendants have been investigated for such conduct.  In March 2007, Fisher-Price was fined $975,000 for not notifying authorities quickly enough about a choking hazard in a toy from its popular Little People product line.  In 2001, Mattel paid $1.1 million for a similar infraction regarding safety defects in its Power Wheels toy vehicles.

## CLASS CERTIFICATION

29.     This action is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons throughout the United States and its territories who purchased Fisher-Price Toys that contained lead paint between April 2007 and the present, which were imported and/or distributed by Defendants.

30.     Membership in the Class is so numerous as to make it impractical to bring all Class members before the Court. The identity and exact number of Class members is unknown but can be determined from Defendants and other members of the Defendant Class. It is estimated to be tens of thousands or more.

31.     Plaintiff's claims are typical of those of other Plaintiff Class members, all of whom have suffered harm due to Defendants and other members of the Defendant Class's uniform course of conduct.

32.     Plaintiff is a member of the Plaintiff Class.

33.     There are numerous and substantial questions of law and fact common to all of

the members of the Plaintiff Class which control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3). These common issues include, but are not limited to:

a) Whether the products are defective;

b) Whether the products were recalled by the CPSC;

c) Whether the products are inherently dangerous;

d) Whether Plaintiff and members of the Class purchased the products;

e) Whether Defendants and other members of the Defendant Class are refusing to reimburse Plaintiff and the members of the Plaintiff Class for the cost of the products;

f) Whether, as a result of Defendants and other members of the Defendant Class's negligent and reckless conduct, children have been exposed to a known hazardous substance;

g) Whether early detection, through medical testing of children, of lead poisoning is made necessary and advisable by the Defendants and other members of the Defendant Class's manufacturing, marketing, and sale of Fisher-Price Toys painted with lead pigment;

h) Whether Defendants and other members of the Defendant Class are refusing to pay for the costs of lead testing;

i) Whether Plaintiff and other members of the Plaintiff Class are entitled to injunctive relief;

j) Whether Defendants and other members of the Defendant Class have been unjustly enriched;

k) Whether Defendants and other members of the Defendant Class's conduct has amount to an unfair and deceptive practice under New York law and/or similar laws of other states; and

l) Whether Plaintiff and Plaintiff Class members were damaged and in what amount.

34. Defendants and other members of the Defendant Class's conduct is such that it is appropriate that there be final injunctive relief to enjoin its conduct with respect to the Plaintiff Class as a whole pursuant to Rule 23(b)(2).

35. A class action is the appropriate method for the fair and efficient adjudication of this controversy for the following reasons:

    a) Without a class action, the Plaintiff Class will continue to suffer damage, Defendants' violations of the law or laws will continue without remedy, and Defendants will continue to enjoy the fruits and proceeds of their unlawful misconduct;

    b) Given (i) the substantive complexity of this litigation; (ii) the size of individual Plaintiff Class members' claims; and (iii) the limited resources of the Plaintiff Class members, few, if any, Plaintiff Class members could afford to seek legal redress individually for the wrongs Defendants and other members of the Defendant Class have committed against them;

    c) This action will foster an orderly and expeditious administration of Plaintiff Class members' claims, economies of time, effort and expense, and uniformity of decision;

    d) Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within the Plaintiff Class members' claims, as are accepted methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendants and other members of the Defendant Class's common liability, the Court can efficiently determine the claims of the individual Plaintiff Class members; and this action presents no difficulty that would impede the Court's management of it as a class action, and a class action is the best (if not the only) available means by which members of the Plaintiff Class can seek legal redress for the harm caused them by Defendants and other members of the Defendant Class.

36. As pled above, Plaintiff also seeks to maintain this action against all other entities that purchased toys containing lead paint for resale from manufacturer Lee Der Industrial Co., a Chinese corporation ("Defendant Class"), with Defendants Fisher-Price and Mattel as Defendant Class Representatives.

37. Defendants Fisher-Price and Mattel are adequate Defendant Class Representatives and will fairly represent the Defendant Class.

38. There are questions of fact and/or law that are common to the class of Defendants, which predominate over any individual questions of fact and/or law.

39. All Defendants in the defined Defendant Class purchased toys containing lead paint from toy manufacturer Lee Der Industrial Co., a Chinese corporation.

40. Defendants Fisher-Price and Mattel are representative of all manufacturers, sellers, and/or distributors who purchased toys for resale from manufacturer Lee Der Industrial Co., a Chinese corporation.

41. Defendants Fisher-Price and Mattel's defenses are typical of those of other members of the Defendant Class, all of whom purchased toys containing lead paint from manufacturer Lee Der Industrial Co.

42. There are numerous and substantial questions of law and fact common to all of the members of the Defendant Class which control this litigation and predominate over any individual issues. The common issues include, but are not limited to, the following:

   a) Whether Defendant Class members purchased for resale toys containing lead paint from Lee Der Industrial Co.;

   b) Whether said toys contained lead paint; and

   c) Whether Defendant Class members sold toys containing lead paint.

CLAIMS FOR RELIEF

## COUNT I

(Violations of Consumer Protection Laws)

43. Plaintiff re-alleges paragraphs 1 through 34 as if fully set forth herein.

44. This is a claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–501.2101 and those other state consumer protection statutes which are in all material respects similar to FDUTPA (collectively "Consumer Protection Laws"), including but not limited to the New York General Business Law, N.Y. Gen. Bus. Law § 349, et seq.

45.     FDUTPA, and the similar Consumer Protection Laws, provide that unfair methods of competition, unconscionable acts and practices, and unfair or deceptive acts or practices in the conduct of "any trade or commerce" are unlawful. Fla. Stat. § 501.204. Under FDUTPA and the similar Consumer Protection Laws, "trade or commerce'' is defined to include advertisement or solicitation relating to any "thing of value." Fla. Stat. § 501.203(8).

46.     Plaintiff and the other Plaintiff Class members are "consumers" or "persons," as defined and construed under FDUTPA (Fla. Stat. §§ 501.201 - 501.213) and the similar Consumer Protection Laws.

47.     Defendants and other members of the Defendant Class's conduct as alleged herein occurred in the course of trade or commerce.

48.     Defendants and other members of the Defendant Class's marketing of the products as being safe for children constitutes an unfair or deceptive trade practice.

49.     Upon information and belief, Defendants and other members of the Defendant Class knew or should have known of the defect at all material times, but did not disclose the defect to consumers.

50.     Even though Defendants and other members of the Defendant Class knew or should have known of the defective nature of the products, they continued to sell the products to consumers without properly disclosing or correcting the defect.

51.     Defendants and other members of the Defendant Class's sales practices were deceptive, misleading, and intended to increase their own profits to the detriment of consumers. Defendants and other members of the Defendant Class have profited from the uniform deceptive practices and marketing campaigns, in that Defendants and other members of the Defendant Class were able to sell hundreds of thousands of products that they could not have sold absent

their deceptive marketing campaigns, causing Plaintiff and the Plaintiff Class substantial injuries.

52. Plaintiff and other members of the Class were deceived by Defendants' failure to disclose the dangers of its products that contained toxic levels of lead paint. Defendants and other members of the Defendant Class would not have been able to sell their dangerous products had they properly disclosed the fact that the products contained lead paint.

53. Plaintiff and other members of the Plaintiff Class would not have purchased the concerned products if Defendants and other members of the Defendant Class had disclosed the dangers of their products, including that such products contained toxic levels of lead paint.

54. Plaintiff and the other Plaintiff Class members suffered actual damages as a result of Defendants' deceptive and unfair trade practices. Specifically, as a result of Defendants and other members of the Defendant Class's deceptive and unfair trade practices, Plaintiff and the other Plaintiff Class members suffered monetary losses, i.e., the purchase price of the products, which themselves are unfit for their intended purpose, and further can be expected to suffer in the future the cost of medical monitoring necessitated by the exposure of their children to the lead paint in Defendants' products.

55. By reason of the foregoing, Defendants and other members of the Defendant Class are liable to Plaintiff and to the Plaintiff Class members in an amount to be proved at trial, including, but not limited to, treble damages or other penalties as may be appropriate under applicable law.

## COUNT II

(Breach of Implied Warranty)

56. Plaintiff re-alleges paragraphs 1 through 34 as if fully set forth herein.

57. Under the Uniform Commercial Code in New York and other states there exists an implied warranty of merchantability. *See* N.Y. U.C.C. § 2-314(1).

58.     Defendants and other members of the Defendant Class, in the manufacture, production, and sale of the products impliedly warranted to Plaintiff and other members of the Plaintiff Class that the products were fit for their ordinary purpose, as toys for children and, in particular, young children.

59.     Defendants and other members of the Defendant Class breached the implied warranty of merchantability by selling children's toys that are dangerous to children and cannot safely be used for their ordinary purpose.

60.     The Fisher-Price Toys were in fact unmerchantable because they could not safely be used for their ordinary and intended purpose.

61.     Defendants and other members of the Defendant Class knew or should have known that the products did not meet the capabilities as represented and marketed.

62.     Before commencing this action, Plaintiff, through counsel, gave notice of the breach of warranty for all transactions involving the sale of Fisher-Price Toys painted with lead paint and also gave notice that Plaintiff and all others similarly situated have and continue to sustain damage and harm.

63.     Plaintiff and members of the Plaintiff Class have been and will be damaged and have suffered and will suffer direct economic, including both the cost of the defective product and the future cost of medical monitoring necessitated by the lead paint.

64.     By reason of the foregoing, Defendants and other members of the Defendant Class are liable to Plaintiff and the members of the Plaintiff Class in an amount to be proved at trial.

### COUNT III

(Strict Liability)

65.     Plaintiff re-alleges paragraphs 1 through 34 as if fully set forth herein.

66. Defendants and other members of the Defendant Class are strictly liable for damages because:

    a) they placed the defective product, the toys covered in lead paint, in the stream of commerce;

    b) the condition of the products - being covered with lead paint - rendered them unreasonably dangerous;

    c) the inherently dangerous condition existed when the product left the control of Defendants and other members of the Defendant Class; and

    d) the condition was a proximate cause of injury.

67. Plaintiff and the other members of the Plaintiff Class may recover for purely economic loss because their damages are proximately caused by Defendants and other members of the Defendant Class's intentional, false representation that the products are safe when, in fact, they are not.

68. Plaintiff and members of the Plaintiff Class have been and will be damaged and have suffered and will suffer direct economic loss, including both the cost of the defective product and the future cost of medical monitoring necessitated by the lead paint.

69. By reason of the foregoing, Defendants and other members of the Defendant Class are liable to Plaintiffs and the members of the Plaintiff Class in an amount to be proved at trial.

### COUNT IV

(Unjust Enrichment)

64. Plaintiff realleges Paragraphs 1 through 34 as if fully set forth herein.

65. Defendants and other members of the Defendant Class received from Plaintiff and Plaintiff Class members certain monies from their purchase of Fisher-Price Toys and the

15

concerned toys of the other Defendant Class members which are excessive and unreasonable, and are the result of Defendants and other members of the Defendant Class's deceptive conduct. The Fisher-Price Toys sold by Defendants and the concerned toys sold by the other Defendant Class members were unreasonably dangerous and unfit for their intended purpose.

66.     As a result, Plaintiff and other members of the Plaintiff Class have conferred a benefit on Defendants and other members of the Defendant Class, and Defendants and other members of the Defendant Class have knowledge of this benefit and have voluntarily accepted and retained the benefit conferred on it.

67.     Defendants and other members of the Defendant Class will be unjustly enriched if they are allowed to retain such funds, and each Plaintiff Class member is entitled to an amount equal to the amount each Plaintiff Class member enriched Defendants and other members of the Defendant Class and for which Defendants and other members of the Defendant Class have been unjustly enriched.

68.     By reason of the foregoing, Defendants and other members of the Defendant Class are liable to disgorge to Plaintiffs and the members of the Plaintiff Class the amount by which each Plaintiff Class member enriched Defendants and other members of the Defendant Class and for which Defendants and other members of the Defendant Class have been unjustly enriched.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the other Plaintiff Class members request that the Court enter an order or judgment against Defendants and other members of the Defendant Class including the following:

    a.     Certification of the action as a Class Action pursuant to Rule 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure, and appointment of

       Plaintiff as Class Representative and Plaintiff's counsel of record as Class Counsel;

b.   Certification of a Defendant Class, and appointment of Defendants Fisher-Price and Mattel as Defendant Class Representatives;

c.   Damages in the amount of monies paid for the Fisher-Price Toys and the concerned toys of the other Defendant Class members and the costs of medical testing for lead poisoning;

d.   Damages in the amount of monies paid or to be paid for lead testing of the children handling the Fisher-Price Toys and the concerned toys of the other Defendant Class members;

e.   Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

f.   Pre-judgment and post-judgment interest on such monetary relief;

g.   Other appropriate injunctive relief;

h.   The costs of bringing this suit, including reasonable attorneys' fees; and

i.   All other relief to which Plaintiff and members of the Plaintiff Class may be entitled at law or in equity.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on any and all counts for which trial by jury is permitted by law.

Dated: New York, New York
       August 9, 2007

                                           Respectfully submitted,

HANLY CONROY BIERSTEIN SHERIDAN
  FISHER & HAYES LLP

By: /s/ Steven M. Hayes
Steven M. Hayes (SH-2926)
112 Madison Avenue, 7th Floor
New York, New York 10016
Telephone: (212) 784-6400
Facsimile: (212) 213-5349/(866) 800-1008

*Attorneys for Plaintiff & Class Members*

*Of Counsel:*

Lance A. Harke, P.A.
Sarah Clasby Engel, P.A.
HARKE & CLASBY LLP
155 South Miami Ave., Suite 600
Miami, Florida 33130
Telephone: (305) 536-8220
Facsimile: (305) 536-8229

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Facsimile: (312) 641-5504

Aron D. Robinson
THE LAW OFFICE OF ARON D. ROBINSON
19 S. LaSalle Street, Suite 1300
Chicago, IL 60603
Telephone: (312) 857-9050
Facsimile: (312) 857-9054

Kenneth J. Brennan
SIMMONSCOOPER LLC
707 Berkshire Blvd.
East Alton, Illinois 62024

Telephone: (618) 259-2222
Facsimile: (618) 259-2251