# EXHIBIT B

```
                                    RECEIVED
                                  CLERK'S OFFICE

                                  2007 SEP -5  P 4: 03

                                  JUDICIAL PANEL ON
                                    MULTIDISTRICT
                                     LITIGATION
```

### BEFORE THE JUDICIAL PANEL ON
### MULTIDISTRICT LITIGATION

In re Mattel Toy Recall Litigation       §       MDL Docket No. _____

### DEFENDANTS' MOTION FOR § 1407 TRANSFER
### OF ACTIONS TO THE CENTRAL DISTRICT OF CALIFORNIA

Pursuant to 28 U. S. C. § 1407 and the Rules of Procedure on Multidistrict Litigation, Mattel, Inc. (Mattel) and its wholly-owned subsidiary, Fisher-Price, Inc. (Fisher-Price), move for an order transferring all related federal actions against them, either of them, or their related entities to the U.S. District Court for the Central District of California, where four of the existing federal actions have been filed, for coordinated or consolidated pretrial proceedings. Defendants further move that the transferred actions be assigned to Judge Dale S. Fischer in the Central District, before whom is currently pending the first-filed of the related actions. The eight putative class actions listed on the accompanying Schedule of Actions and any future tag-along actions satisfy the requirements for transfer under § 1407 because they are competing to represent duplicative and overlapping classes of plaintiffs, they involve at least one common

question of fact, and transfer of the actions will serve "the convenience of the parties and witnesses and will promote the just and efficient conduct of the actions."

In support, defendants state:

1. Mattel and/or Fisher-Price are defendants in eight putative class actions filed in five different federal districts: four in the Central District of California, and one each in the Southern District of New York, the Southern District of Indiana, the Eastern District of Pennsylvania, and the District of South Carolina.

2. A Schedule of Actions listing all related federal actions of which defendants are aware is filed with this motion. A courtesy copy of each complaint and the docket sheet for each action is submitted with this motion.

3. These actions all include factual allegations regarding toys made for Mattel and Fisher-Price by contract manufacturers in China, which were the subject of August 2 and August 14, 2007 voluntary recalls by Mattel, in cooperation with the U.S. Consumer Products Safety Commission (collectively, the "Recalled Toys"), because surface paints on portions of the toys potentially could contain levels of lead in excess of applicable standards.

4. Each action seeks to certify a class or classes of plaintiffs under Rule 23 of the Federal Rules of Civil Procedure. There is substantial overlap and duplication in the classes that plaintiffs in each of the actions seek to have certified. Six of the actions propose nationwide classes, and all include the purchasers and/or users of the Recalled Toys within their scope.[1]

5. In addition to the eight federal actions, there are three state court putative class actions currently pending in California Superior Court (two in Los Angeles County and one in San Francisco County) arising from the same toy product recalls and asserting claims similar to

---

[1] Two of the federal actions seek certification of statewide classes, but those proposed class members would be subsumed in the proposed nationwide classes identified in the other actions.

those in the federal actions. These state court actions are subject to removal under the Class Action Fairness Act of 2005, and Mattel intends to remove the cases to federal court. At that time, there will be eleven related federal actions, with six of eleven in the Central District of California, one in the Northern District of California, and four pending in the other districts.

6. Centralization of these cases in the Central District of California will promote the just and efficient conduct of this litigation under 28 U. S. C. § 1407. Absent transfer of these cases to a single forum for coordinated or consolidated pretrial proceedings, there is a substantial risk of duplicative discovery and inconsistent and conflicting pretrial rulings on discovery and other key issues, such as class certification.

7. Centralization of these lawsuits in the Central District of California will save plaintiffs and defendants the burden of having to prosecute and defend overlapping and duplicative putative class actions in multiple federal districts across the country. In addition, centralization will be more convenient for the parties and the witnesses, and will conserve the resources of the parties, the judiciary and the attorneys.

8. All of these actions were filed on or after August 7, 2007, and are still in the beginning stages of litigation. The date for defendants' responses to the various complaints has either been extended or has not yet arrived such that no answers or responsive motions have been filed, no discovery has been conducted to date, and no initial disclosures have been made in any of these cases. Because all of the lawsuits are in the beginning stages of litigation, no prejudice or inconvenience will result from a § 1407 transfer.

9. The Central District of California is the best alternative as the transferee district because (i) four of the eight federal actions are pending there, and the other four federal actions are pending in four different federal districts, (ii) the Central District of California is a likely

location of some of the relevant documents and witnesses, as Mattel's corporate headquarters are located there.[2] (iii) the Central District of California has adequate resources to handle this docket, and (iv) Los Angeles is readily accessible by air with a number of area airports and large numbers of flights.

10. A comparison of the relative MDL caseload of potential transferee districts also indicates that the Central District of California is a suitable forum. According to the Distribution of Pending MDL Dockets as of July 12, 2007, only eleven MDL matters are pending there.

11. Defendants respectfully suggest that all of the actions be assigned to the Hon. Dale S. Fischer (C.D. Cal.), who is the assigned judge in *Mayhew*, the first-filed case.

12. Target Corporation, which is named as a defendant only in *Mayhew*, consents to the coordination under § 1407.

Wherefore, defendants Mattel and Fisher-Price request that: (i) the actions listed on the Schedule of Actions that are not pending in the Central District of California be transferred to that district under 28 U.S.C. § 1407, (ii) all of the actions be assigned to the Hon. Dale S. Fischer for coordinated or consolidated pretrial proceedings, and (iii) defendants receive such other and further relief to which they may be entitled.

---

[2] The named plaintiffs in the eight federal actions reside in California, Alabama, Florida, Indiana, Michigan, New York, Pennsylvania and South Carolina.

Dated: September 5, 2007    Respectfully submitted,

_Hugh Whiting (MRF)_
Hugh Whiting
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
Email: hrwhiting@jonesday.com

Thomas E. Fennell
Michael L. Rice
JONES DAY
2727 N. Harwood St.
Dallas, TX 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
Emails: tefennell@jonesday.com
        mlrice@jonesday.com

Attorneys for Defendants Mattel, Inc.,
Fisher-Price, Inc., and Target Corporation

RECEIVED
CLERK'S OFFICE

2007 SEP -5 P 4: 03

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

In re Mattel Toy Recall Litigation § MDL Docket No. _____

### DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR § 1407 TRANSFER OF ACTIONS TO THE CENTRAL DISTRICT OF CALIFORNIA

Defendants Mattel, Inc. (Mattel) and Fisher-Price, Inc. (Fisher-Price) seek a transfer of actions to the Central District of California pursuant to 28 U.S.C. § 1407. The Central District of California is where four of the eight current federal actions are pending, including the first-filed action, and where Mattel's corporate headquarters and certain of its witnesses and documents are located. Thus, transfer and centralization of all federal actions to the Central District of California will best serve the just and efficient conduct of this litigation, preserve judicial resources, prevent potential conflicting rulings, and be more convenient for the parties and potential witnesses.

### FACTUAL BACKGROUND

The eight federal actions all involve allegations that on August 2 and August 14, 2007, Mattel, in cooperation with the United States Consumer Product Safety Commission ("CPSC"), announced voluntary recalls of 85 different SKUs (stock keep units) of toys all made by vendors

(contract manufacturers) in China, because surface paints on portions of the toys potentially could contain lead levels in excess of applicable standards (the "Recalled Toys"). Eight putative class action lawsuits have been filed since August 7, 2007, in five different federal districts, against Mattel and/or its wholly-owned subsidiary, Fisher-Price.[1] The only claims in all of these lawsuits focus on the Recalled Toys. As a result, these actions will require similar discovery with respect to the production of the Recalled Toys in China.

Moreover, these actions are brought on behalf of overlapping and duplicative classes of putative plaintiffs. Six of the actions seek certification of nationwide classes.[2] The *Mayhew*, *White*, *Luttenberger*, *Shoukry* and *Puerzer* proposed classes include purchasers of the Recalled Toys, and seek medical monitoring for children exposed to the toys. The *Sarjent* action seeks certification of two nationwide classes: (i) purchasers of the Recalled Toys and (ii) children exposed to the Recalled Toys for medical monitoring. The *Monroe* and *Hughey* actions seek the same medical monitoring relief for proposed statewide classes of children exposed to the Recalled Toys. The currently pending federal actions are summarized on Exhibit 1 (attached to this brief).

## ARGUMENT

### A.     The Mattel Litigation Is A Perfect Fit For MDL Treatment

The Mattel litigation presents a perfect situation for MDL transfer. Eight class actions, making similar allegations regarding the Recalled Toys and seeking to certify overlapping and duplicative classes, are now pending in federal districts scattered across the country – four in California and one each in New York, Pennsylvania, Indiana and South Carolina. Six of the

---

[1] Target Corporation is also named as a defendant in one of the actions, and Target consents to the § 1407 transfer sought by Mattel and Fisher-Price.

[2] The *Mayhew*, *White*, *Luttenberger*, *Puerzer*, *Shoukry* and *Sarjent* actions seek nationwide classes. Two of the three actions now pending in California state court, subject to removal pursuant to 28 U.S.C. § 1332(d), seek certification of nationwide classes of purchasers and/or users of the Recalled Toys. The other state court action seeks certification of a statewide class of purchasers of the Recalled Toys.

actions propose essentially identical nationwide classes, while the other two propose statewide classes that are subsets of the other six (*Monroe* – Pennsylvania, and *Hughey* – South Carolina).

This is a classic case of multiple actions with overlapping and duplicative proposed classes, pending in several federal districts, which make similar allegations regarding a specific set of products. All of the cases were filed within the last 30 days and thus are at the very start of the litigation process. No motions have been filed in any of the cases, no discovery has occurred, and defendants' answers are not due yet. All of the requirements for transfer under §1407(a) are met, and all of the material factors compel one conclusion – that these actions be transferred to the Central District of California, where four of the eight federal actions are pending, and where Mattel's principal corporate offices are located. Defendants respectfully suggest that the actions be assigned to Hon. Dale S. Fischer (C.D. Cal.), the assigned judge in the first-filed action.

**B.  Transfer Under §1407(a) Will Promote The Just And Efficient Conduct Of The Actions**

**1.  There are numerous class actions, proposing overlapping and duplicative classes, filed in different districts.**

The MDL procedure was designed specifically for circumstances such as the Mattel litigation. The Panel has frequently granted transfer where numerous class actions were filed in different federal districts. Indeed, the Panel has often granted transfers where there were fewer than the eight pending class actions at issue here.[3]

Significantly, the proposed classes in the eight federal actions substantially overlap. (*See* attached Exhibit 1). Although there are slight wording differences, at bottom, in *Mayhew*, *White*, *Luttenberger*, *Puerzer*, *Shoukry* and *Sarjent*, the proposed classes appear to include all persons in the United States (and/or their children) who purchased (or, in *Puerzer*, received) the Recalled

---

[3] *See, e.g., In re Maytag Corp. Neptune Washer Products Liab. Litig.*, 333 F. Supp. 2d 1382, 1382-1383 (J.P.M.L. 2004) (ordering transfer of three putative class actions pending in three districts); *In re Canon U.S.A., Inc., Digital Cameras Products Liab. Litig.*, 416 F. Supp. 2d 1369, 1370-1371 (J.P.M.L. 2006) (ordering transfer of two putative class actions and one potential tag-along action pending in two districts). The Complaints against Mattel estimate the five nationwide class sizes to be from "thousands" to "hundreds of thousands" of persons across the United States.

Toys. These actions propose substantially the same class, and all seek medical monitoring for children exposed to the toys. The other two actions, *Monroe* and *Hughey*, seek the same medical monitoring relief for proposed classes of children within Pennsylvania and South Carolina, respectively, thus constituting subsets of the other proposed nationwide classes.

The potential for conflicting or overlapping class actions "presents one of the strongest reasons" for transfer under §1407(a).[4] Indeed, transfer is favored to ensure consistency of rulings, especially with respect to class certification matters.[5] Of course, plaintiffs in the six nationwide class actions assert conflicting claims as to class representation.[6] As the Multidistrict Litigation Manual notes, "[t]he management of the litigation would become exceedingly difficult if similar actions involving overlapping classes were proceeding in different districts."[7] In reality, §1407(a) transfer is the only practicable method available to ensure the just and efficient conduct of these actions.

### 2. There is a likelihood of multiple, conflicting pretrial rulings.

The pendency of these eight class actions containing similar product allegations stemming from the August 2 and August 14 recalls, and with substantially identical and/or overlapping proposed classes, presents the likelihood of multiple, conflicting pretrial rulings on any number of matters, not the least of which is class certification. However, the pendency of these actions in different district courts presents the very real risk that conflicting rulings will result. Moreover, there is a great likelihood of conflicting rulings on discovery motions, motions

---

[4] *In re Plumbing Fixtures*, 308 F. Supp. 242, 243-244 (J.P.M.L. 1970).

[5] *In re Roadway Express, Inc. Employment Practices Litig.*, 384 F. Supp. 612, 613 (J.P.M.L. 1974) (noting that the conflicting and overlapping class allegations "raise the indubitable possibility of inconsistent class determinations by courts of coordinate jurisdiction" and the need to eliminate this possibility presents a highly persuasive reason favoring transfer); *In re Maytag Corp. Neptune Washer Products Liab. Litig.*, 333 F. Supp. 2d 1382, 1383 (J.P.M.L. 2004) (finding that transfer of three purported class actions brought by persons seeking to recover damages due to alleged defects in washing machines was necessary in order to prevent inconsistent pretrial rulings, especially with respect to jurisdictional and class certification matters).

[6] *See In re Refrigerant Gas Antitrust Litig.*, 334 F. Supp. 996, 997 (J.P.M.L. 1971) ("the conflicting claims to class representation asserted by plaintiffs are additional reasons for our decision [to transfer].")

[7] Multidistrict Litigation Manual at p. 144.

for protective orders, and other pretrial motions that would lead to differing discovery obligations for the defendants from one action to the next with respect to document production, interrogatory responses, requests for admissions, and deposition testimony. The likelihood of conflicting pretrial rulings will be eliminated by an MDL transfer.[8]

### 3. There is a certainty of duplicative discovery.

Given that all eight pending actions are premised upon the same Recalled Toys, assert similar causes of action, and seek similar forms of relief,[9] there is a virtual certainty of duplicative discovery if MDL transfer is not granted. This duplicative discovery would be extremely and needlessly wasteful, burdensome and expensive for the parties. The burdens of duplicative discovery would be particularly heavy here, because the underlying events regarding the production of the Recalled Toys occurred in China. Transfer under §1407(a) would provide centralized management of discovery in the transferee court, thus eliminating the tremendous inefficiencies of duplicative discovery.[10]

### 4. MDL transfer will conserve the resources of the parties, the judiciary and the attorneys.

Without a § 1407 transfer by the MDL Panel, at least five federal district judges will have to address the same issues regarding discovery, class certification, and substantive pretrial motions. Conflicting and duplicative schedules would be unavoidable, and because the

---

[8] *See, e.g., In re Dow Chemical Co. "Sarabond" Products Liab. Litig.*, 650 F. Supp. 187, 188 (J.P.M.L. 1986) (transfer granted to, *inter alia*, prevent inconsistent pretrial rulings in product liability actions with common fact questions of product design, testing and marketing, and defendant's knowledge of alleged injurious effect of product); *In re Air Crash at DFW Airport on Aug. 2, 1985*, 623 F. Supp. 634, 635 (J.P.M.L. 1985) (transfer granted to, *inter alia*, prevent inconsistent pretrial rulings in case with common factual questions arising from same air crash).

[9] *See* Exhibit 1 attached to this brief.

[10] *See, e.g., In re Fosamax Products Liab. Litig.*, 444 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006) (finding that transfer would place all actions before a single judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs and ensure that common parties and witnesses are not subjected to duplicative discovery demands); *In re Dow Chemical "Sarabond"*, 650 F. Supp. at 189 (transferring product liability actions with common fact questions as to design, testing and marketing of product, and defendant's knowledge, to avoid duplicative discovery).

defendants could not undertake the same activities simultaneously in separate actions, the pretrial process would take longer and require more resources than a single, coordinated approach. All of the federal district judges in these cases would spend countless hours and substantial energy in making rulings and in managing very similar cases, with the likelihood of ongoing interference by the concurrent proceedings in the other cases. The 18 plaintiff law firms reflected in the pleadings, along with the defendants' counsel, would be prosecuting and defending these multiple, overlapping and duplicative putative class actions in multiple district courts across the country. Avoiding this unnecessary waste of resources is the very reason the MDL procedure exists, and compels an MDL transfer under these circumstances.[11]

### C. The Actions Involve Similar Allegations Regarding Production Of The Toys In China

All of the pending actions involve allegations regarding the production of toys in China with surface paints that potentially could contain lead and the sale of those toys in the United States. While the various actions may put somewhat different labels on the legal theories on which they base their claims, all of those theories spring from the circumstances surrounding the production of those toys. It is indisputable that discovery with respect to those circumstances will occur in every pending case. The need to address these common circumstances makes MDL transfer appropriate.[12]

---

[11] See, e.g., In re Fosamax Products Liab. Litig., 444 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006) (product liability actions with common fact questions transferred to, inter alia, conserve the resources of the parties, their counsel and the judiciary); In re Maytag Corp. Neptune Washer Products Liab. Litig., 333 F. Supp. 2d 1382, 1383 (J.P.M.L. 2004) (same); In re MLR, LLC, Patent Litig., 269 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003) (noting that it is "logical to assume that prudent counsel will combine their forces and apportion their workload," which will promote efficiency and conserve resources).

[12] See, e.g., In re Fosamax Products Liab. Litig., 444 F. Supp. 2d 1347, 1348-49 (J.P.M.L. 2006) (common fact questions included development, testing, manufacturing and marketing of product, and whether defendant knew of adverse effects); In re Maytag Corp. Neptune Washer Products Liab. Litig., 333 F. Supp. 2d 1382, 1383 (J.P.M.L. 2004) (common fact questions existed, as all actions were purported class actions seeking to recover damages because of alleged defects in washing machines); In re Bridgestone/Firestone Tires Product Liab. Litig., 151 F. Supp. 2d 1381, 1382 (J.P.M.L. 2001) (common fact questions existed, as the actions involved claims that defendants were responsible for harm or risk of harm caused by defective tires and/or vehicles).

### D. Transfer To The Central District of California Will Serve The Convenience Of Parties And Witnesses

#### 1. Four of the eight actions are pending in the Central District of California.

Four of the eight federal class actions were filed in the Central District of California (hereafter, "CD-CA"), including the first-filed action. The other four actions are in four different federal districts — the Southern District of Indiana, the Southern District of New York, the Eastern District of Pennsylvania, and the District of South Carolina. Two of the California state court actions will be removed to the Central District of California. Under these circumstances, absent compelling factors not present here, the CD-CA should be the transferee district.[13]

#### 2. Mattel's corporate headquarters are in the Central District of California.

The CD-CA is a likely source of documents and witnesses because Mattel's corporate headquarters are located in that district, in El Segundo. The presence of a corporate defendant's headquarters as a likely location of relevant evidence is an important factor confirming that the CD-CA is the appropriate forum for these actions.[14] No defendant resides in any other district where an action is pending.[15]

---

[13] *See, e.g., In re Dow Chemical "Sarabond,"* 650 F. Supp. at 189 (J.P.M.L. 2005) (finding that the District of Colorado was the most appropriate transferee forum because, among other reasons, six of the fourteen actions subject to transfer were already pending in that district); *In re Fosamax*, 444 F. Supp. 2d at 1349 (noting that the Southern District of New York was an appropriate transferee forum, in part because most of the actions were already pending in that district); *In re High Sulfur Content Gasoline*, 344 F. Supp. 2d 755, 757 (J.P.M.L. 2004) (finding that the Eastern District of Louisiana was an appropriate transferee forum because four of the five actions were pending in that district, among other reasons).

[14] *See, e.g., In re McDonald's French Fries Litig.*, 444 F. Supp. 2d 1342, 1343 (J.P.M.L. 2006) (finding that the Northern District of Illinois was an appropriate transferee forum because the district was a likely source of relevant documents and witnesses since it was the location of defendant McDonald's headquarters); *In re Ford Motor Co Speed Control Deactivation Switch*, 398 F. Supp. 2d 1365, 1367 (J.P.M.L. 2005) (holding that Eastern District of Michigan was an appropriate transferee forum where that district contained the first-filed action and was a likely source of relevant documents and witnesses because defendant Ford's headquarters was located there).

[15] As alleged in several of the Complaints, Fisher-Price's corporate headquarters are located in East Aurora, New York, in the Western District of New York. Target Corporation, a defendant in *Mayhew*, has its principal executive offices in Minneapolis, Minnesota, as alleged in that Complaint (¶ 8).

3. **There is a "California tilt" that strongly counsels transfer to the Central District of California.**

There is a strong "California tilt" under these facts, creating circumstances greatly weighted toward transfer to the CD–CA as the best alternative. Other factors confirm this choice. The CD–CA has very adequate resources to handle this docket. According to the Distribution of Pending MDL Dockets as of July 12, 2007, only eleven MDL matters are pending there.

Moreover, Los Angeles is one of the most accessible cities in the country by air. Los Angeles is particularly convenient with respect to discovery regarding the events surrounding production of the toys in China. Nearly all of the federal actions propose nationwide classes, and plaintiffs' counsel in every one of the federal actions knew and alleged that Mattel's corporate headquarters are in California. The allegations of the complaints are nationwide in scope and all plaintiffs' counsel knew before filing that substantial cross-country air travel very likely would be necessary during pretrial proceedings. Given the "California tilt" so obviously present here, the overall convenience of the parties, witnesses, judiciary and the attorneys is best served by transferring the actions for centralization in the CD–CA.

Defendants respectfully suggest that all of the actions be assigned to Hon. Dale S. Fischer (C.D. Cal.), the assigned judge in *Mayhew*, the first-filed of the eight federal actions. Judge Fischer is an appropriate choice, given that the Panel has previously selected Judge Fischer as a coordinating judge. *See In re Bluetooth Headset Products Liability Litigation*, MDL-1822 (shown as pending before Judge Fischer on Distribution of Pending MDL Dockets dated July 12, 2007).

Wherefore, Defendants Mattel and Fisher-Price request that: (i) the actions listed on the Schedule of Actions that are not pending in the Central District of California be transferred to that district under 28 U.S.C. § 1407, (ii) all of the actions be assigned to the Hon. Dale S. Fischer for coordinated or consolidated pretrial proceedings, and (iii) defendants receive such other and further relief to which they may be entitled.

Dated: September 5, 2007                     Respectfully submitted,

*Hugh Whiting (MHE)*
Hugh Whiting
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
Email: hrwhiting@jonesday.com

Thomas E. Fennell
Michael L. Rice
JONES DAY
2727 N. Harwood St.
Dallas, TX 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
Emails: tefennell@jonesday.com
         mlrice@jonesday.com

Attorneys for Defendants Mattel, Inc.,
Fisher-Price, Inc., and Target Corporation

## Exhibit 1

## In re Mattel Toy Recall Litigation

## Comparison of Federal Actions

| Parties | Court | Proposed Plaintiff Class(es) | Causes of Action | Relief Sought |
|---|---|---|---|---|
| Mayhew v. Mattel, Fisher-Price, and Target | C.D. California | "All persons who purchased Fisher-Price toys from May 1, 2007 through August 2, 2007 and which have a date code between 109-7LF and 187-7LF marked on the product." (Complaint, ¶ 22) | 1. Medical monitoring<br>2. Breach of warranty<br>3. Negligence<br>4. Unlawful, unfair or fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code §17200, et seq. | 1. Certification of class<br>2. Court-supervised medical monitoring program<br>3. Costs, experts' and attorneys' fees |
| White v. Mattel and Fisher-Price | C.D. California | "All persons who purchased the Recalled Toys manufactured, imported and/or distributed by Defendants." (Complaint, ¶ 25) | 1. Breach of Cal. Bus. & Prof. Code, §17200, et seq.<br>2. Violation of Cal. Bus. & Prof. Code §17500, et seq.<br>3. Unjust enrichment<br>4. Breach of implied warranty<br>5. Strict liability<br>6. Negligent product design<br>7. Negligent product manufacture | 1. Certification of class<br>2. Damages - monies paid for Recalled Toys<br>3. Actual, statutory, punitive, treble damages and statutory relief<br>4. Interest<br>5. Restitution<br>6. Order requiring defendants to fund lead testing to address needs of the class and their children<br>7. Compensation for injuries and cost of treatment<br>8. Order requiring defendants to certify their toys are safe and lead-free<br>9. "Other appropriate injunctive relief"<br>10. Costs, incl. attorneys' fees |

| Luttenberger v. Mattel and Fisher-Price | C.D. California | "All persons who during the period May 1, 2007 through August 1, 2007, purchased and/or were exposed to the Toys that were manufactured and/or distributed by Defendants and were recalled due to lead poisoning hazards." (Complaint, ¶ 25) | 1. Negligence<br>2. Breach of implied warranty<br>3. Breach of express warranty<br>4. Negligence and breach of express and implied warranties for purposes of establishing medical monitoring<br>5. Strict products liability for purposes of establishing medical monitoring<br>6. Violation of Cal. Consumers Legal Remedies Act and similar consumer protection statutes of other states<br>7. Violation of U.S. Consumer Product Safety Act and Rules | 1. Certification of class<br>2. Actual, compensatory and consequential damages, including amount to fund medical monitoring<br>3. Punitive and treble damages under relevant laws<br>4. Equitable and injunctive relief to establish medical monitoring program<br>5. Costs; experts' and attorneys' fees |
| Puerzer v. Mattel and Fisher-Price | C.D. California | "All persons who purchased and/or paid for and/or received as a gift various recalled Mattel Toys." (Complaint, ¶ 30) | 1. Strict products liability<br>2. Negligence<br>3. Unjust enrichment<br>4. Breach of implied warranty<br>5. Unlawful, unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code §17200, et seq., 17500 et seq. and consumer fraud laws of other states<br>6. Unlawful practice in sale of consumer goods in violation of Cal. Consumers Legal Remedies Act and similar consumer laws of other states<br>7. Breach of express warranty<br>8. Class action injunctive and equitable relief - medical monitoring | 1. Certification of class<br>2. Comprehensive court-supervised medical monitoring program<br>3. Damages – refund of all costs of purchase of toys<br>4. Compensatory damages<br>5. Punitive damages<br>6. Attorneys' fees and costs |

| Case | Court | Class Definition | Claims | Relief Sought |
|---|---|---|---|---|
| Shoukry v. Fisher-Price and Mattel | S.D. New York | "All persons throughout the United States and its territories who purchased Fisher-Price Toys that contained lead paint between April 2007 and the present, which were imported and/or distributed by Defendants." (Complaint, ¶ 29) | 1. Violation of Florida Deceptive and Unfair Trade Practices Act, and similar statutes of other states<br>2. Breach of implied warranty<br>3. Strict liability<br>4. Unjust enrichment | 1. Certification of class<br>2. Certification of Defendant class<br>3. Damages in the amount paid for the toys and costs of medical testing for lead poisoning<br>4. Damages in the amount paid for lead testing of children<br>5. Actual, statutory punitive, treble damages and statutory relief<br>6. Interest<br>7. "Other appropriate injunctive relief" |
| Sarjent v. Fisher-Price and Mattel | S.D. Indiana | Consumer Class:<br>"All Consumer residents and/or domiciliaries of the United States who purchased and/or paid for various Fisher Price Toys included in the August 1 and/or August 14, 2007 recalls." (Complaint, ¶ 21)<br><br>Medical Monitoring Class:<br>"All children of Consumer residents and/or domiciliaries of the United States who purchased and/or paid for various Fisher Price Toys included in the August 1 and/or August 14, 2007 recalls." (Complaint, ¶ 22) | 1. Unjust enrichment<br>2. Breach of implied warranties in violation of state statutes<br>3. Products liability<br>4. Negligence<br>5. Unfair and deceptive trade practices under state law<br>6. Medical monitoring | 1. Certification of class<br>2. "Declare, adjudge and decree the conduct of the Defendants herein to be unlawful"<br>3. Actual, compensatory, punitive and/or exemplary damages<br>4. Medical monitoring, whether as damages or injunctive relief<br>5. Costs, incl. attorneys' fees |
| Monroe v. Mattel | E.D. Pennsylvania | "All children under the age of six years who are citizens of the Commonwealth of Pennsylvania, and who have come into contact with any of the Recalled Toys." (Complaint, ¶ 24) | 1. Negligence – medical monitoring | 1. Certification of class<br>2. Create fund, paid for by defendant and under court supervision, for medical monitoring<br>3. Order requiring defendants to pay for publication to class of guidelines and procedures for medical screening and monitoring<br>4. Costs; experts' and attorneys' fees<br>5. Interest |

- 3 -

| Hughey v. Fisher-Price and Mattel | D. South Carolina | "All children in South Carolina who were exposed to Defendants' toys containing lead paid [sic] in the period beginning in April, 2007 (as represented by their parents and guardians until each class member may reach the age of majority)." (Complaint, ¶ 37) | 1. Strict liability in tort<br>2. Negligence<br>3. Breach of implied warranty of merchantability and fitness for a particular purpose | 1. Certification of class<br>2. Damages in the amount of costs of medical monitoring for lead poisoning<br>3. Damages in the amount paid for lead testing of children<br>4. Actual, statutory or punitive damages<br>5. Interest<br>6. Costs, incl. attorneys' fees |