EXHIBIT 1

RECEIVED
CLERK'S OFFICE

2007 OCT -4  A 10: 19

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| **In re Mattel Inc. Toy Lead Paint Products Liability Litigation** | ) ) ) ) | **MDL No: 1897** |

### JOINT MEMORANDUM OF PLAINTIFFS FARRAH SHOUKRY AND SETH GOLDMAN IN RESPONSE TO MOTIONS TO TRANSFER PURSUANT TO 28 U.S.C. § 1407

Plaintiffs Farrah Shoukry and Seth Goldman ("Plaintiffs"),[1] through undersigned counsel, respectfully respond to: Defendants' Motion for § 1407 Transfer of Actions to the Central District of California dated September 5, 2007; Plaintiff Daniel and Caroline Hughey's Motion to Transfer for Coordinated or Consolidated Pretrial Proceedings dated September 5, 2007; and Joint Motion of Certain Plaintiffs ["the Puerzer Group"] for Transfer of Actions to the Central District of California Pursuant to 28 U.S.C. § 1407 dated September 14, 2007, and state:

Plaintiffs Shoukry and Goldman agree that transfer and consolidation pursuant to 28 U.S.C. § 1407 is appropriate and proper. While the Central District of California is certainly an appropriate and capable venue to administer this action, Plaintiffs Shoukry and Goldman respectfully suggest that these cases should be transferred and consolidated to the convenient and equally appropriate venue of the Southern District of New York.

---

[1] Farrah Shoukry and Seth Goldman are proposed class representatives in the following cases, respectively: *Shoukry v. Fisher-Price*, Case No. 1:07-CV-07182 (S.D.N.Y) and *Goldman v. Fisher Price, Inc. et al.* Case No. CV-07764 (S.D.N.Y.).

## Factual Background

Plaintiffs and the members of the putative class are consumers who purchased toys manufactured and/or distributed by the Defendants that were recalled because they contained lead paint. The majority of the recalled toys are Fisher-Price toys. Fisher-Price is a wholly owned subsidiary of Mattel.

Plaintiffs have sued Defendants under theories including strict liability, unjust enrichment, breach of warranty and violation of consumer protection laws. Plaintiffs seek, *inter alia*, damages, statutory remedies and medical monitoring. Plaintiffs' complaints seek certification of not only a national class of plaintiffs who purchased the recalled toys, but also a class of defendants who purchased toys containing lead paint for resale from Lee Der Industrial Co., a Chinese corporation that manufactured the toys at issue.

To date, there have been eleven federal actions filed throughout the United States raising similar allegations. *See* Exhibit A. Five have been filed in California, two in New York, two in Pennsylvania and one each in Indiana and South Carolina.

Prior to the Mattel/Fisher-Price recalls, another recall was issued by another toy maker, RC2 Corporation ("RC2"), due to lead paint on toys manufactured in China. Similarly, there have been numerous actions filed throughout the country based upon the RC2 recall, and several motions to transfer filed before the Panel in that matter. *See In re RC2 Corp. Toy Lead Paint Products Liability Litigation*, M.D.L. Docket No. 1893.

## Argument

Plaintiffs Shoukry and Goldman agree with the pending motions seeking § 1407 transfer and consolidation for MDL treatment. These actions present textbook cases for MDL treatment given the substantial commonality of factual and legal questions presented in the individual cases

at issue, and the strong potential for the preservation of judicial resources that MDL treatment will afford.  Plaintiffs further submit that the Southern District of New York, where the *Shoukry* and *Goldman* actions are located, should be designated as the transferee Court for these actions.

The Southern District of New York has long been recognized as a district with vast resources, a convenient location and highly experienced judges in MDL situations, making it ideally suited for an MDL transfer.  *See In re Worldcom, Inc. Securities "ERISA" Litigation*, 226 F.Supp.2d 1352 (J.P.M.L. 2002) ("a litigation of this scope will benefit from centralization in a major metropolitan center  [S.D.N.Y.] that is well served by major airlines, provides ample hotel and office accommodations, and offers a well developed support system for legal services"); *In re Time Warner Inc. Securities Litigation*, 235 F. Supp.2d 1380, 1381 (J.P.M.L. 2002) (noting that the S.D.N.Y. "possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require"); *In re Merril Lynch & Co. Inc. Research Reports Securities Litigation*, 223 F. Supp. 2d 1388, 1390 (J.P.M.L.2002) (same).  The Panel has transferred actions to the Southern District of New York where, as here, "the New York area is one of *several* locations likely to be a source of documents and witnesses relevant to this litigation . . . ." *In re Worldcom, Inc. Securities "ERISA" Litigation*, 226 F.Supp.2d 1352 (J.P.M.L. 2002) (emphasis added).

Although defendant Mattel is headquartered in California, defendant Fisher-Price is headquarted in New York,[2] with offices in the Southern District of New York.  Defendant Fisher-Price's website touts that its division, Fisher-Price Friends (which includes many of the recalled Sesame Street products), "is located in bustling downtown Manhattan.  Our offices cover two floors in the Barnes & Noble Building on 6th Avenue between 21st and 22[nd] Streets.

---

[2] Fisher-Price is headquarted in the Western District of New York.

This area is known as the Chelsea District or the Toy District and is the home of the International

Toy Fair." *See* Fisher-Price Website excerpt (attached hereto as Exhibit B).

Further, although Mattel/Fisher-Price and the Puerzer Group both indicate that Mattel is

headquarted in California, neither has submitted any evidence showing that there would be more

witnesses and/or documents[3] located in California than in New York, where Fisher-Price is

located. Indeed, Mattel's Brief in Support of Motion for § 1407 Transfer is curiously devoid of

any details, specific facts or evidence that would demonstrate what the California headquarters of

Fisher-Price's corporate parent, Mattel, has to do with the use of lead-paint on Fisher-Price toys.[4]

Moreover, there is no real dispute that the defendants manufactured and/or distributed the

products that were the subject of the lead-paint toy recall, and that those products were not

manufactured in the United States. *See* Defs.' Mot. for § 1407 Transfer dated 9/5/07 at ¶ 3

("These actions all include factual allegations regarding toys made for Mattel and Fisher-Price

by contract manufacturers in China, which were the subject of August 2 and August 14, 2007

voluntary recalls by Mattel . . . because surface paints on portions of the toys potentially could

---

[3] Moreover, due to advances in technology, the documents to be requested by all
Plaintiffs will likely be electronic, or maintained in electronic format. Thus, they are readily
producable to plaintiffs regardless of venue. It is also unknown where the majority of relevant
witnesses are, though it is likely many witnesses are located throughout the United States.
Finally, the products at issue were marketed and sold throughout the United States, making no
geographic area more suitable than any other. In short, given that these matters are nationwide
class actions, the Southern District of New York is readily accessible, has several large airports
servicing the area, and is a highly convenient forum for parties traveling from around the
country. Many of plaintiff's counsel have offices, or alliances, in New York and have or had
many other cases in that venue.

[4] For example, Mattel's brief merely states in conclusory terms: "the CD-CA is a likely
source of documents and witnesses because Mattel's corporate headquarters are located in that
district, in El Segundo. The presence of a corporate defendant's headquarters as a likely location
of relevant evidence is an important factor confirming that the CD-CA is the appropriate forum
for these actions." Defs.' Brief in Support of Motion for § 1407 Transfer of Actions to the
Central District of California dated 09/05/07 at 7.

HARKE & CLASBY LLP
155 South Miami Avenue • Suite 600 • Miami, FL 33130 • Tel. 305-536-8220 • Fax 305-536-8229

contain levels of lead in excess of applicable standards."). Therefore, a critical focus of the litigation will deal with determining appropriate remedies to the consumer and establishing a program for medical monitoring, issues that are easily capable of being resolved in the Southern District of New York and that are not tied to any particular geographic location in the United States.

As Defendants concede, none of the filed cases is significantly more advanced than the others. *See* Defendant's Brief in Support of Motion for § 1407 Transfer dated 9/5/07 at 3 ("All of the cases were filed within the last 30 days and thus are at the very start of the litigation process."). Therefore, there is no "tilt" to a particular district based upon advancement of litigation, making the Southern District of New York an appropriate choice.

### *The Southern District of New York Would Be an Appropriate Venue for the Coordination of the Mattel/Fisher-Price Matters and the RC2 Litigation.*

At least one party to the RC2 matter has requested that the Panel coordinate the Mattel/Fisher-Price cases with the RC2 matters and transfer them to the same district. *See* Mem. of Plaintiff Jennifer Foshee Deke in Response to RC2 Corp. and Learning Curve Brands, Inc.'s Motion for Transfer dated 9/18/07 filed in *In re RC2 Corp. Toy Lead Paint Products Liability Litig.*, MDL Docket 1893 (attached hereto as Exhibit C). Plaintiffs Shoukry and Goldman do not oppose such coordination. Indeed, Plaintiffs Shoukry and Goldman have asked for a defendant class on the basis that additional defendants may come to light as discovery progresses. In the event the Mattel/Fisher-Price and the RC2 cases are coordinated, there will be no single district that stands out as a focal point with the most ties to the action. In such a case, transfer to a court with the experience and capacity to handle such complex litigation, like the Southern District of New York or the Northern District of Illinois (where RC2 is headquartered), is warranted. *See In re Motor Fuel Temperature Sales Practices Litigation*, 493 F. Supp.2d 1365 (J.P.M.L. 2007)

("Given the geographic dispersal of constituent actions and potential tag-alongs, no district stands out as the geographic focal point for this national docket. Thus, we have searched for a transferee judge with the time and experience to steer this litigation on a prudent course and sitting in a district with the capacity to handle this litigation.").

WHEREFORE, Plaintiffs Shoukry and Goldman respectfully submit that the Panel consolidate and transfer the referenced actions pursuant to 28 U.S.C. § 1407, and that these actions be transferred to United States District Court for the Southern District of New York.

Dated: October 3, 2007

Respectfully submitted,

By: _____
Lance A. Harke, P.A.
Sarah Clasby Engel, P.A.
HARKE & CLASBY LLP
155 South Miami Ave., Suite 600
Miami, Florida 33130
Telephone: (305) 536-8220
Facsimile: (305) 536-8229

Ben Barnow
BARNOW & ASSOCIATES, P.C.
105 W Madison St, Suite 2200
Chicago, IL 60602-4606
Telephone: (312) 621-2000
Facsimile: (312) 641-5504

Kenneth J. Brennan
SIMMONS COOPER LLC
707 Berkshire Blvd.
East Alton, Illinois 62024
Telephone: (618) 259-2222
Facsimile: (618) 259-2251

Steven M. Hayes
HANLY CONROY BIERSTEIN SHERIDAN
FISHER & HAYES LLP
112 Madison Avenue, 7th Floor
New York, New York 10016
Telephone: (212) 784-6400
Facsimile: (212) 213-5349/(866) 800-1008

Aron D. Robinson
THE LAW OFFICE OF ARON D. ROBINSON
19 S. LaSalle Street, Suite 1300
Chicago, IL 60603
Telephone: (312) 857-9050
Facsimile: (312) 857-9054

*Attorneys for Farrah Shoukry and*
*Seth Goldman*

HARKE & CLASBY LLP
155 South Miami Avenue • Suite 600 • Miami, FL 33130 • Tel. 305-536-8220 • Fax 305-536-8229

EXHIBIT

A

**SCHEDULE OF ACTIONS**

In re: Mattel Lead Painted Toys Litigation

Cases as of 10/03/07

| Case Caption | District | Case No. | Date Filed | Judge |
|---|---|---|---|---|
| Southern District of New York | | | | |
| Farrah Shoukry v. Fisher Price, Inc. and Mattel, Inc. | Southern District of New York (Foley Square) | 1:07-cv-07182 | 08/10/07 | Hon. Denise L. Cote |
| Seth Goldman v. Fisher Price, Inc. and Mattel, Inc. | Southern District of New York (Foley Square) | 1:07-cv-07764 | 08/31/07 | Hon. John E. Sprizzo |
| Central District of California | | | | |
| Ann L. Mayhew, Hannah E. Mayhew v. Mattel, Inc. | Central District of California (Los Angeles) | 2:07-cv-05126 | 08/08/07 | Hon. Dale S. Fischer |

| | | | |
|---|---|---|---|
| Nicole B. White<br><br>v.<br><br>Mattel, Inc. | Central District of<br>California (Los Angeles) | 2:07-cv-05366 | 08/16/07 | Hon. Dale S. Fischer |
| Adam Luttenberger<br><br>v.<br><br>Mattel, Inc. and Fisher<br>Price, Inc. | Central District of<br>California (Los Angeles) | 2:07-cv-05539 | 08/23/07 | Hon. Dale S. Fischer |
| Heather Davis Puerzer<br><br>v.<br><br>Mattel, Inc. and Fisher<br>Price, Inc. | Central District of<br>California (Los Angeles) | 2:07-cv-05661 | 08/29/07 | Hon. Dale S. Fischer |
| Nisha Shah<br><br>v.<br><br>Mattel, Inc. and Fisher<br>Price, Inc. | Central District of<br>California (Los Angeles) | 2:07-cv-05960 | 09/13/07 | Hon. Otis D. Wright II |

2

| | | | | |
|---|---|---|---|---|
| **Southern District of Indiana** | | | | |
| Steve Sarjent and Joy Sarjent v. Fisher Price, Inc. and Mattel, Inc. | Southern District of Indiana (Indianapolis) | 1:07-cv-01060 | 08/16/07 | Hon. John Daniel Tinder |
| **Eastern District of Pennsylvania** | | | | |
| Nydia Monroe, Arthur Monroe and Nicole Clark v. Mattel, Inc. | Eastern District of Pennsylvania (Philadelphia) | 2:07-cv-03410 | 08/17/07 | Hon. Petrese B. Tucker |
| Jacob Chow v. Mattel, Inc., Mattel Overseas, Inc., Mattel Sales Corp., Mattel Direct Import, Corp., Mattel Operations, Inc., and Fisher-Price, Inc. | Eastern District of Pennsylvania (Philadelphia) | 2:07-cv-03741 | 09/07/07 | Hon. Petrese B. Tucker |

| District of South Carolina Daniel S. Hughey v. Fisher Price, Inc. and Mattel, Inc. | District of South Carolina (Charleston) | 2:07-cv-02930 | 08/24/07 | Hon. David C. Norton |
|---|---|---|---|---|

4

EXHIBIT

B

Fisher-Price® Human Resources - About Us                                          Page 1 of 4



Home | About Us | It's Fun to Work Here! | View Current Openings

**Links**
- Our Work
- Our Philosophy
- Diversity in Our Workplace
- Our Values
- Our Expectations
- Our Creed
- Our Story
- Our Locations
- Giving to Our Communities



### Our Work

As the most trusted name in quality toys, Fisher-Price® has been helping to make childhood special for generations of kids. While we're still loved for our classics, our employees' talent, energy and ideas have helped us keep pace with the interests and needs of today's families. Now we add innovative learning toys, toys based on popular preschool characters, award-winning baby gear, and numerous licensed children's products to the list of Fisher-Price favorites.

### Our Philosophy

We believe in the potential of children and in the importance of a supportive environment in which they can grow, learn, and get the best possible start in life. Our company supports today's families with young children through our breadth of products and services that make early childhood more fun and enriching.
top ▲



*1930's*

### Diversity in Our Workplace

To be recognized as a premier employer of choice ... enriched and enlightened by diversity in our workplace and community, seeking out and embracing the uniqueness each individual brings to our workplace.

Fisher-Price is committed to attracting, developing and retaining the highest caliber talent and fully utilizing each person's unique abilities to achieve superior business results.

We will achieve this vision by:

- Treating "effective diversity management" as a core leadership competency and business priority.

- Creating a workforce, at all levels, that reflects the diversity of our consumers and the population at large.

- Assuring equal opportunity and fair employment practices.

- Recognizing employees' needs for work life balance and providing development opportunities that enable all employees to continually improve their capabilities and maximize their contributions.

top ▲



*1940's*



*1950's*

### Our Values

In keeping with our long-standing tradition of innovation, quality, durability, safety and good value, we offer products and services consumers can trust to improve their family's lives. Through the power of teamwork, we challenge ourselves to strive for excellence and to exceed our consumers' and partners' expectations.
top ▲



*1960's*

### Our Expectations

Our efforts will successfully increase market share and not only reward our shareholders and customers with superior financial returns, but also provide our employees with opportunities to enhance their lives and those of their families.
top ▲

### Our Creed

Since 1930, we've been in business to create toys that fascinate and stimulate a child's imagination. In fact, our founders' criteria for toymaking still holds true today:

*"Fisher-Price toys should have intrinsic play value, ingenuity, strong construction, good value*



*1970's*

*and action."*

Herman Fisher, Irving Price, Helen Schelle, 1930

top ▲



**1980's**

## Our Story



Fisher-Price was founded in 1930, hardly the best time to launch a new business as the shadows of the Depression still loomed over American business. Still, Herman Fisher, Irving Price and Helen Schelle combined their diverse manufacturing and retailing experience to create our toy company and confidently brought 16 wooden toys to the International Toy Fair in New York City. The whimsical nature and magical surprises of those first toys quickly caught on and became the hallmarks of Fisher-Price ever since.

- In 1969, at the age of 71, Herman Fisher retired as President of Fisher-Price.

- In 1969, we were acquired by The Quaker Oats Company.

- In 1991, Quaker Oats spun off its Fisher-Price division and the company became an independent, publicly traded company.

- In November, 1993, stockholders of Fisher-Price, Inc. and Mattel, Inc. approved a merger under which Fisher-Price became a wholly owned subsidiary of Mattel. This merger ignited remarkable growth for us in international markets and through product acquisitions.

- After Mattel's acquisition of Tyco Toys in 1997, the Fisher-Price name became the umbrella brand over all Mattel's infant and preschool lines.



**1990's**

**More details:**
- 100% of parents in the United States are familiar with the Fisher-Price brand name.

- Worldwide gross sales of Fisher-Price Brands was $1.9 billion in 2004.

- Fisher-Price is a wholly owned subsidiary of Mattel, Inc., the worldwide leader in toy products, with $3.2 billion for Mattel Brands, $5.1 billion for Mattel, Inc., including Fisher-Price Brands, in 2004. Mattel's best-selling brands are Barbie®, Hot Wheels®, Fisher-Price® and American Girl®. Visit www.mattel.com.

top ▲



**2000**

## Our Locations
**Fisher-Price Headquarters**
**East Aurora, NY**



Headquarters for Fisher-Price is a campus of buildings located in East Aurora, New York, a small, historic village 20 minutes southeast of Buffalo. It's a close-knit community with lovely old homes, gently rolling hills, good schools and friendly, hardworking neighbors.

**We're Close To** — City life, with Buffalo 20 minutes away, Rochester one hour away, and Toronto less than a two-hour drive; the wonder of Niagara Falls and numerous other state parks; Canada, half an hour from the border; ski country south of Buffalo; the shores of Lakes Erie and Ontario; the Niagara region's bountiful orchards, vineyards and farmers' markets.



**Weather** — Yes, we get snow, but every inch is softened by the caring people who live here — Western New Yorkers agree that the coldest, snowiest days bring everyone closer together to shovel each other out or ask if you need something from the store. In addition, the other three seasons of the year are just lovely here!



**History** — East Aurora was home to the Roycrofters Arts & Crafts movement, and craftsmen still gather and work here today. Our Nation's 13th president, Millard Fillmore, resided here and his house built in 1825 is now a National Landmark.



**Economy** — Fisher-Price is a major employer here, along with Rich Products frozen foods; General Motors and Ford; numerous financial, medical and pharmaceutical companies; and SUNY educational system. Western New York is also gaining ground as an up-and-coming "byte belt" for computer technology and internet developers.

**Sports** — We're big fans of the Buffalo Bills, our NFL team; the Buffalo Bisons AAA Baseball; Buffalo Sabres NHL; Bandits lacrosse; and some of the best salmon fishing derbies on Lake Ontario.

**Cultural Resources, Activities & Entertainment** — Highlights include the Buffalo Philharmonic Orchestra; Albright-Knox Art Gallery; distinguished theater district; numerous colleges and universities including SUNY at Buffalo, the largest state university in New York; and award-winning restaurants where you can enjoy everything from Buffalo Wings to gourmet cuisine.

 **Population** — East Aurora is small-town friendly, but the Buffalo metropolitan area is home to over one million people.

 **Of Note** — USA Today recently launched a nationwide search for a "City with Heart," and Buffalo received the most votes from its residents.

top ▲

 **Fisher-Price Friends**
**New York City, NY**

 Fisher-Price Friends is located in bustling downtown Manhattan. Our offices cover two floors in the Barnes & Noble Building on 6th Avenue between 21st and 22nd Streets. This area is also known as the Chelsea District or the Toy District and is the home of the International Toy Fair.

Manhattan is teeming with restaurants, shopping, museums, cultural and historical sites as well as beautiful architecture. Some of our most notable attractions include: the Statue of Liberty, the Empire State Building, Rockefeller Center, Carnegie Hall, The Guggenheim Museum, The Metropolitan Museum of Art, The New York Botanical Gardens, Central Park, St. Patrick's Cathedral, Madison Square Garden, Radio City Music Hall, Broadway, Yankee Stadium, Times Square and the list goes on and on. Whether you prefer shopping on 5th Avenue, attending a Broadway Play, dining out or want to ride in a horse-drawn carriage through Central Park, there is not much you cannot do or see in NYC!

Some of our NYC staff live in the city, while others travel from a variety of surrounding areas to work. These areas include New Jersey, Long Island, Westchester and Connecticut. The staff you will find here are hard working, dedicated and committed to our customers and our products. They are used to a fast pace and are willing to roll up their sleeves to do what it takes to get the job done and done well.

top ▲

## Giving to Our Communities

Fisher-Price has a long tradition of corporate giving and is committed to helping not-for-profit organizations and programs. We place special emphasis on charities that serve children from birth to 6 years of age, including:

**EPIC (Every Person Influences Children)** — Fisher-Price has partnered with this non-profit organization, dedicated to helping parents and teachers raise children to become responsible adults, by funding the "Childcare Space" in the new national Center for Parenting and Character Development in Buffalo, N.Y.

  **Fisher-Price Playground Projects** — Fisher-Price employee volunteers installed eighteen playgrounds throughout the Western New York community since 1994, in contribution to Buffalo, New York's "Success by Six" initiatives.

**Buffalo Philharmonic Orchestra** — We've supported this world-class symphony orchestra for over 25 years, sponsoring the "Educational Concert Series" that has pre- and post-concert programs allowing children to meet the musicians and see and touch the instruments.

**Theatre of Youth (TOY)** — Fisher-Price is a long-time supporter of upstate New York's only full-time professional theatre dedicated to young audiences, and happily fund the annual children's holiday show.

**United Way** — Whether it's through our annual employee-giving campaign that includes a corporate gift, support of its "Success By Six" program, or participation in their annual "Day of Caring," we stand behind the United Way and lend assistance to its many programs that help children and families in need.

**Women and Children's Hospital of Buffalo** — Fisher-Price product designers lovingly created a "Family Center" room at Buffalo's Women and Children's Hospital and renovated the main lobby, transforming it into a child-friendly atmosphere.

**Cradle Beach Camp** — Fisher-Price contributes financially to Cradle Beach, which has been serving disabled and disadvantaged children in Western New York since 1888.

**Mattel Children's Foundation —**
**Making a meaningful difference, one child at a time!**
Mattel, Fisher-Price's parent company, is the largest toy manufacturer in the world. Across all divisions of the company, we believe it is our responsibility to lead the way in making a difference in the lives of children in need. We affect change in many ways, including our international grant-making program, toy donations, partnerships with charitable organizations dedicated to serving children, and the volunteer activities of our employees around the world.

**Buffalo Alliance For Education —**
Fisher-Price has established a relationship with this "connector" organization to provide much-needed funding for student field trips (PreK-Grade 4) that have been eliminated from school budgets in the Buffalo and Western New York Area, through the "Field Trip Fund."

**Explore and More...A Children's Museum —**
Fisher-Price has established a relationship with this "connector" organization to provide much-needed funding for student field trips (PreK-Grade 4) that have been eliminated from school budgets in the Buffalo and Western New York Area, through the "Field Trip Fund."
top ▲



www.fisher-price.com

**FISHER-PRICE PRIVACY POLICY | FISHER-PRICE LEGAL TERMS & CONDITIONS**
© 2007 Mattel, Inc. All Rights Reserved.
Use of this U.S. site signifies your acceptance of the terms and conditions of use.
Customer Service • Help with Fisher-Price.com • E-mail Page to a Friend
Home for Fisher-Price toys & more

EXHIBIT

C

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

In Re RC2 Corp. Toy Lead Paint                    MDL Docket No. 1893
Products Liability Litigation
_____/

**MEMORANDUM OF PLAINTIFF JENNIFER FOSHEE DEKE IN RESPONSE
TO RC2 CORP. AND LEARNING CURVE BRANDS, INC.'S MOTION FOR
TRANSFER AND CONSOLIDATION TO THE NORTHERN DISTRICT OF
ILLINOIS AND IN RESPONSE TO PLAINTIFF ABEL MARTINEZ'S
MOTION FOR TRANSFER AND CONSOLIDATION TO THE
CENTRAL DISTRICT OF CALIFORNIA**

Jennifer Foshee Deke, plaintiff in the action entitled *Deke v. RC2 Corp.*, No. 1:07-

CV-03609 (N.D. Ill.), by her undersigned counsel, submits this memorandum in support

of plaintiff Abel Martinez's motion for transfer and consolidation of these actions to the

Central District of California and in opposition to defendants' RC2 Corporation and

Learning Curve Brands, Inc. (collectively "RC2") motion for transfer and consolidation

of these actions to the Northern District of Illinois.[1]

_____

[1] Although the Panel only referenced the motions filed by plaintiff Martinez and by defendant RC2,
plaintiff Deke also responds to the joint motion of certain plaintiffs for transfer and consolidation of these
actions to the Northern District of Illinois filed by plaintiffs in the following actions: *Hesse v. Learning
Curve Brands, Inc.*, No. 07-CV-03514 (N.D. Ill.); *Walton v. RC2 Corp.*, No. 07-CV-03614 (N.D. Ill.);

Plaintiff Deke agrees that consolidation of the actions is warranted under 28

U.S.C. § 1407 due to the existence of common issues of fact.  Plaintiff Deke also agrees

with plaintiff Martinez on the location of the transferee forum and believes that the

actions should be transferred to the Central District of California as it is the most

appropriate forum for the prosecution of these actions.

## I.    INTRODUCTION

As set forth in greater detail below, the Panel should consolidate and transfer the

actions to the Central District of California for the following reasons:

- The Central District of California is the location of relevant documents
  and witnesses as it is the location of the ports where the contaminated toys
  were imported from Asia and is also the location where inspections of the
  toy products were made;

- The Central District of California is in closer proximity than the Northern
  District of Illinois to witnesses traveling from China, where the
  contaminated toys were manufactured; and

- The Central District of California has the necessary experience and
  resources to handle this litigation -- the Panel has previously recognized
  this fact and has frequently transferred multidistrict litigation to the
  Central District of California for this very reason.

Additionally, and also set forth in greater detail below, the Central District of

California is the location of the first-filed action in another lead contamination litigation

pending against Mattel Inc., ("Mattel") Fisher-Price Inc. ("Fisher-Price") and Target

Corporation (the "Mattel Defendants").  The actions against the Mattel Defendants

involve similar sets of facts and the same legal theories set forth in the actions against the

---

*O'Leary v. Learning Curve Brands*, No. 07-CV-03682 (N.D. Ill.); *Djuristic v. Apax Partners, Inc.*, No. 07-CV-03707 (N.D. Ill.); *Reddell v. Learning Curve Brands Inc.*, No. 07-CV-03747 (N.D. Ill.); *Rohde v. Learning Curve Brands Inc.*, No. 07-CV-04187 (N.D. Ill.); *Kreiner v. RC2 Corp.*, No. 07-CV-04547 (N.D. Ill.); *Wilson v. Learning Curve Brands*, No. 07-CV-04642 (N.D. Ill.); *Sweeney v. RC2 Corp.*, No. 07-CV-00772 (S.D. Ind.); *Kelly v. RC2 Corp.*, No. 07-CV-02525 (E.D.N.Y.); *Stratton v. RC2 Corp.*, No. 4:07-CV-00640 (E.D. Ark.).

2