RC2 Defendants:[2] that defendants negligently designed, manufactured, distributed, marketed and/or sold toy products that contained toxic lead.

In fact, there are 11 class action complaints currently pending against the Mattel Defendants. Five of these actions are pending in the Central District of California, including the first-filed action against Mattel. Notably, counsel for the Mattel Defendants filed a motion with the Panel to transfer and consolidate the actions against the Mattel Defendants to the Central District of California.[3]

Thus, plaintiff requests that the Panel find the Central District of California the most appropriate transferee forum for the consolidation of the actions against the RC2 Defendants as well as for *all* the pending lead paint actions.

## II. STATEMENT OF FACTS

### A. The Actions against the RC2 Defendants

On June 13, 2007, RC2, in cooperation with the United States Consumer Product Safety Commission ("CPSC"), announced the recall of approximately 1.5 million Thomas & Friends™ Wooden Railway Toys ("Recalled RC2 Toys") that were manufactured in a facility in China. Following the June 13, 2007 Recall, at least fifteen class action complaints were filed against the RC2 Defendants on behalf of all persons who purchased the Recalled RC2 Toys from January 1, 2005 through June 14, 2007. The actions allege violations of consumer fraud, strict liability, negligence, medical

---

[2] The RC2 Defendants include RC2, Wal-Mart and Toys "R" Us.

[3] *See* Notice from the Panel dated September 7, 2007 regarding MDL No. 1897 – *In re Mattel, Inc., Toy Lead Paint Products Liability Litigation.*

monitoring and breach of warranty arising out of the RC2 Defendants' manufacture, production, marketing, distribution and/or design of the Recalled RC2 Toys.[4]

The actions against the RC2 Defendants all arise out of the RC2 Defendants' design, manufacture, marketing, sale and distribution of the Recalled RC2 Toys contaminated with lead paint. All actions allege that plaintiffs would not have purchased the toys for their young children had they known about the lead contamination. Plaintiffs in the actions against the RC2 Defendants seek medical monitoring, among other types of relief, on behalf of children of class members, in order to ensure the early detection of physical harm and to prevent further injuries.

### B.     The Actions against the Mattel Defendants

On August 2, 2007, in cooperation with the CPSC, Mattel announced the recall of various Fisher-Price toys ("August 2 Recall"). According to the August 2 Recall, Mattel determined that the surface paints on the recalled products could contain excessive levels of lead, which is toxic if ingested by young children and can cause adverse health effects. The August 2 Recall involved approximately 967,000 Fisher-Price toys that were manufactured in China between April 19, 2007 and July 6, 2007. Mattel issued another recall on August 14, 2007 announcing the recall of 253,000 toy cars that may contain excessive levels of lead. Mattel then issued yet another recall on September 4, 2007

---

[4] These actions include the following: *Hesse v. Learning Curve Brands, Inc.*, No. 07-CV-03514 (N.D. Ill.); *Deke v. RC2 Corp.*, No. 07-CV-03609 (N.D. Ill.); *Walton v. RC2 Corp.*, No. 07-CV-03614 (N.D. Ill.); *O'Leary v. Learning Curve Brands Inc.*, No. 07-CV-03682 (N.D. Ill.); *Djurisic v. Apax Partners, Inc.*, No. 1:07-CV-03707 (N.D. Ill.); *Reddell v. Learning Curve Brands Inc.*, 1:07-CV-03747 (N.D. Ill.); *Rohde v. Learning Curve Brands Inc.*, No. 1:07-CV-04187 (N.D. Ill.); *Kreiner v. RC2 Corp.*, No. 1:07-CV-04547 (N.D. Ill.); *Wilson v. Learning Curve Brands*, No. 1:07-CV-04642 (N.D. Ill.); *Sweeney v. RC2 Corp.*, No. 1:07-CV-00772 (S.D. Ind.); *Kelly v. RC2 Corp.*, No. 1:07-CV-02525 (E.D.N.Y.); *Murdock v. RC2 Corp.*, No. 2:07-CV-03376 (D.N.J.); *Stratton v. RC2 Corp.*, No. 4:07-CV-00640 (E.D. Ark.); *Martinez v. RC2 Corp.*, No. 07-CV-5401 (C.D. Cal.); *Singer v. Learning Curve Brands Inc.*, No. 07-CV-22271 (S.D. Fla.).

announcing the recall of 11 toys that contain impermissible levels of lead. Approximately 530,000 toys were affected by the September 4, 2007 recall.[5]

Following the Mattel Recalls, 11 class action complaints were filed against the Mattel Defendants.[6] Five out of the 11 class action complaints were filed in the Central District of California, including one filed by the undersigned counsel on behalf of Ann L. Mayhew on August 7, 2007. Just like the actions against the RC2 Defendants, the actions against the Mattel Defendants all arise out of the Mattel Defendants' design, manufacture, marketing, sale and distribution of the Recalled Mattel Toys contaminated with lead paint. All actions allege that plaintiffs would not have purchased the toys for their young children had they known about the lead contamination. Additionally, similar to the plaintiffs in the actions against the RC2 Defendants, plaintiffs in the actions against the Mattel Defendants seek medical monitoring on behalf of children of class members, among other types of relief, in order to ensure the early detection of physical harm and to prevent further injuries.

On September 7, 2007, counsel for the Mattel Defendants filed a motion to transfer and consolidate the actions to the Central District of California. Plaintiff Mayhew will be filing a response to Mattel's motion on September 27, 2007, requesting

---

[5] The August and September recalls will be collectively referred to herein as "Mattel Recalls" and the toys that were recalled in the Mattel Recalls will be referred to herein as "Recalled Mattel Toys".

[6] These actions include the following: *Mayhew v. Mattel, Inc.*, No. 07-CV-05126 (C.D. Cal.); *Sargent v. Fisher-Price Inc.*, No. 07-CV-01060 (S.D. Ind.); *Shoukry v. Fisher-Price Inc.*, No. 07-CV-07182 (S.D.N.Y.); *Monroe v. Mattel, Inc.*, No. 07-CV-03410 (E.D. Pa.); *White v. Mattel, Inc.*, No. 07-CV-05366 (C.D. Cal.); *Hughey v. Fisher-Price, Inc.*, No. 07-CV-02930 (D.S.C.); *Chow v. Mattel Inc.*, No. 07-CV-03741 (E.D. Pa.); *Goldman v. Fisher-Price, Inc.*, No. 07-CV-07764 (S.D.N.Y.); *Puerzer v. Mattel Inc.*, No. 07-CV-05661 (C.D. Cal.); *Luttenberger v. Mattel, Inc.*, No. 07-CV-05539 (C.D. Cal.); *Shah v. Mattel, Inc.*, No. 07-CV-05690.

that the actions against the Mattel Defendants be consolidated and transferred to the Central District of California.

### III. ARGUMENT

#### A. Consolidation of the Actions against the RC2 Defendants is Appropriate Pursuant to 28 U.S.C. § 1407

Pursuant to 28 U.S.C. § 1407(a), a party may request that the Judicial Panel on Multidistrict Litigation (the "Panel") designate a centralized forum for management of identified actions "[w]hen civil actions involving one or more common questions of fact are pending in different districts."

The actions against RC2 (as well as the actions against Mattel) are premised upon the same core allegations. In this regard, the substantive factual and legal theory of the complaints against RC2 are identical -- *i.e.*, that defendants negligently designed, manufactured, distributed, marketed and/or sold dangerously defective products. *See In re Ephedra Prods. Liab. Litig.*, 314 F. Supp. 2d 1373, 1375 (J.P.M.L. 2004) (transferring and consolidating case where common factual questions arise where the actions focus on alleged side effects of drug).

The common questions in the actions here (as well as the actions against the Mattel Defendants) include, *inter alia*, whether: (i) defendants negligently manufactured, distributed, marketed, tested and or sold the recalled toys; (ii) defendants are strictly liable for the manufacture and design of the recalled toys; (iii) defendants engaged in deceptive and unfair business and trade practices; (iv) there is an increased risk of serious health problems in young children as a result of lead contamination; (v) the increased risk of serious health problems in young children makes periodic medical examinations necessary; (vi) defendants conducted adequate studies and quality tests of their recalled

6

toys; and (vii) the class has been injured by virtue of defendants' negligence, carelessness and/or deceptive business practices and conduct.

Therefore, the actions that are subject to RC2's motion to transfer as well as plaintiff Martinez's motion to transfer, and those subsequently filed related actions, clearly fall within the scope of the Panel as they all involve common of questions of fact and are based on the same legal theories.

Additionally, the Panel may transfer and consolidate cases pending in different districts when such cases threaten duplicative discovery, and transfer of the cases would be for the "convenience of [] parties and witnesses" and will "promote the just and efficient conduct of these [actions]." *Id.* As the motions filed by plaintiff Martinez and the RC2 Defendants acknowledge, because the actions are rooted in the same misconduct, plaintiffs in the actions will seek to depose a similar core of individuals believed to be involved in, or who have relevant knowledge about, the alleged unlawful conduct. The time and expense saved from consolidation of these proceedings will benefit the plaintiffs, the defendants and the judicial system as a whole. On this basis alone, the Panel has repeatedly recognized that the creation of a centralization MDL forum is appropriate. *See, e.g., In re Merscorp, Inc., Real Estate Settlement Procedures Act (RESPA) Litig.*, 473 F. Supp. 2d. 1379, 1379 (J.P.M.L. 2007) (holding that centralization under Section 1407 was warranted where centralization would promote just and efficient conduct of the litigation, and was necessary in order to eliminate duplicative discovery).

Thus, consolidation of these actions to one district -- the Central District of California -- will conserve judicial resources that would otherwise be expended if the actions remained in separate districts and will avoid duplicative discovery.[7]

### B. The Central District of California is the Proper Forum for Coordinated Pretrial Proceedings of the RC2 Litigation

Once it has determined that transfer is appropriate under § 1407, the Panel should transfer the actions to the District which will best serve the convenience of the parties and the witnesses as well as the just and effective conduct of the actions. *In re Computervision Corp. Sec. Litig.*, 814 F. Supp. 85, 86 (J.P.M.L. 1993). In this case, the proper venue is the Central District of California.

#### i. The Central District of California is the Appropriate Forum for these Actions

##### a. The Central District of California is the Likely Location of the Ports where the Recalled Toys Arrived from China and is therefore the District Where a Large Number of Key Witnesses and Documents will be Located

The Panel regularly keeps cases in the same jurisdiction, or one in close proximity, to the witnesses in an action. *See, e.g., In re Human Tissue Prods. Liab. Litig.*, 435 F. Supp. 2d 1352, 1354 (J.P.M.L. 2006); *In re Conagra Peanut Butter Prods. Liab. Litig.*, 495 F. Supp. 2d 1381, 1382 (J.P.M.L. 2007). The Central District of California is the likely source of relevant documents and witnesses because most, if not

---

[7] While not at issue on the instant motions to transfer and consolidate the actions against the RC2 Defendants, plaintiff notes that the actions against the Mattel Defendants also involve the very same common questions and facts listed above against the RC2 Defendants. Additionally, discovery in the actions against the Mattel Defendants will be substantially similar and duplicative of discovery in the actions against the RC2 Defendants as it will involve similar fact witnesses and documents because, among other reasons, all the toys were manufactured in China and arrived to the United States at ports located in California.

8

all, of the Recalled RC2 Toys traveled from China (where they were manufactured)[8] to ports in the United States, including ports in California. Indeed, China sends more products through the ports in Los Angeles and Long Beach California than any other port in the United States.[9] More than 80% of United States imports from China are shipped through the Los Angeles and Long Beach ports, including the Recalled RC2 Toys at issue in the actions here.[10]

As reported in a *New York Times* article discussing toys containing lead that were manufactured in China, a single inspector from the CPSC, located at the ports in Los Angeles, spot-checks incoming shipments of toy products from China.[11] Plaintiff will seek to depose this inspector and other individuals with knowledge of the import of RC2's toy products. Additionally, plaintiff will also seek documents related to the inspection of the Recalled RC2 Toys in Los Angeles. Therefore, the Central District of California is an appropriate forum as witnesses and documents relevant to the litigation will be found there.

        b.      **The Central District of California is Geographically Closer to China than any other State and is Easily Accessible to Witnesses Traveling from China**

---

[8] According to RC2's 10-K for the year ended December 31, 2006, 91.8% of RC2's toy products came from China.

[9] In fact, the ports in Los Angeles, California and Long Beach, California are the top two United States maritime ports. *See* America's Container Ports: Delivering the Goods, March 2007, *available at* http://www.bts.gov/publications/americas_container_ports/pdf/entire.pdf.

[10] *See Recalls Soar Amid Safety Fears*, Long Beach Press Telegram, September 5, 2007, *available at* http://www.presstelegram.com/news/ci_6812380.

[11] *See* Eric Lipton, *The TestingLab: Safety Agency Faces Scrutiny Amid Changes*, N.Y Times, September 2, 2007, *available at* http://select.nytimes.com/search/restricted/article?res=F4061FFF385E0C718CDDA00894DF404482.

9

The Central District of California is also geographically closer to China -- where the Recalled RC2 Toys were manufactured -- than the Northern District of Illinois. Since the Recalled RC2 Toys were manufactured in China and since audits and investigations were conducted of those manufacturing facilities in China, many witnesses will be traveling from China to the United States. There is no doubt that California is the most convenient state in the United States to witnesses traveling from Asia – a factor the Panel considers in its decision of where to transfer actions. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 483 F. Supp. 2d 1353, 1354 (J.P.M.L. 2007) (transferring twenty actions to the Northern District of California as it is "more conveniently located for the significant number of Asia-based defendants").[12]

Similarly, travel is made even easier to and from Asia in light of Los Angeles International airport which has numerous direct flights to Asia. Since the Central District of California is significantly closer in geographic proximity to Asia than the Northern District of Illinois and is therefore more accessible to witnesses traveling from Asia, the Central District of California is an appropriate transferee forum for this litigation.

        c.    **The Central District of California Has the Experience and Resources to Properly Handle the Actions**

---

[12] Indeed, three of the law firms (Kaplan Fox & Kilsheimer LLP, Price Waicukauski & Riley and Hagens Berman Sobol Shapiro LLP) who filed the joint motion for transfer and consolidation in the Northern District of Illinois on behalf of the plaintiffs referenced above in footnote 1, also have cases pending against the Mattel Defendants and filed a joint memorandum for transfer and coordination of these cases in the Central District of California on or about September 14, 2007. ("Joint Memo"). The Joint Memo acknowledges that *"Los Angeles is more convenient than other venues where cases are pending with respect to anticipated discovery regarding the toy production plants owned and operated by Mattel in China."* See Joint Memo at 14. The very same is true for the cases against the RC2 Defendants since the Recalled RC2 Toys were also manufactured in China by plants owned and operated by RC2. This fact not only provides further support for transfer and consolidation of the cases against the RC2 Defendants in California, but also provides further support for consolidation and transfer of the actions against both groups of defendants in one MDL in California.

10

The Central District of California has the experience and resources to handle complex litigation. Indeed, in determining the appropriate location for the transferee district in multidistrict litigation, the Panel has found that the Central District of California possesses the necessary resources to manage complex multidistrict litigation. *See, e.g., In re Live Concert Antitrust Litig.*, 429 F. Supp. 2d, 1363, 1364 (J.P.M.L. 2006) (transferring to the Central District of California after noting that the district is "well equipped with the resources that this complex antitrust docket, encompassing multiple regions of the country, is likely to require"); *In re StarMed Health Personnel, Inc., Fair Labor Standards Act Litig.*, 317 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004) (transferring to the Central District of California and noting "this tribunal has the resources [] to manage this litigation"); *see also In re Paxil Prods. Liab. Litig.*, 296 F. Supp. 2d 1374, 1375 (J.P.M.L. 2003) (transferring to the Central District of California even though only one case out of twelve was filed there, since the district has "the capacity to handle this litigation").

In fact, the judges in the Central District of California have terminated multi-district litigations at a significantly higher rate than the judges of the Northern District of Illinois. For instance, for the twelve months ending September 30, 2006, the judges in the Central District of California terminated 19 MDL's, while the judges in the Northern District of Illinois terminated only 11.[13] And, as of July 12, 2007, the Central District of California had only 11 pending MDL proceedings while the Northern District of Illinois had 15. Therefore, the Central District of California has the capacity and has demonstrated the ability to move these types of cases along at an expeditious pace.

---

[13] Statistical Analysis of Multidistrict Litigation 2006, *available at* http://www.jpml.uscourts.gov/statistics/Statistical-Analysis-2006.pdf.

### d. A Case against RC2 is Pending in the Central District of California

Another factor the Panel considers when deciding the appropriate transferee district is whether there are actions already pending in the district. *See, e.g., In re Reformulated Gasoline (RFG) Antitrust & Patent Litig.*, 370 F. Supp. 2d 1357, 1359 (J.P.M.L. 2005) (transferring case to the Central District of California where three out of ten actions were pending in the Central District of California). One action against RC2 is pending in the Central District of California.[14] Although this is not the location of the majority of cases against the RC2 Defendants, such a majority is not required. *See Id.* Nevertheless, as described below, if the Panel were to consolidate all lead contamination actions, the Central District of California would be the most logical transferee forum as there are actions in the Central District of California against both the RC2 Defendants and the Mattel Defendants.

### e. Cases against Mattel are Pending in the Central District of California

Five of the 11 complaints against the Mattel Defendants are pending in the Central District of California, including the first class action complaint filed against Mattel. If the actions against the Mattel Defendants are consolidated and transferred to the Central District of California, and there is a good chance they will in light of the Mattel Defendants' motion to transfer the cases there, the actions against the RC2 Defendants should also be consolidated in the Central District of California.

---

[14] In fact, counsel for plaintiff who filed the action against RC2 in the Central District of California, King & Ferlauto LLP, also filed a motion for transfer and coordination of the actions in the Central District of California.

12

    **C.**    **The Pending Actions against the RC2 Defendants should be Consolidated and Transferred with the Actions against the Mattel Defendants in One MDL in the Central District of California**

11 class action complaints are currently pending against the Mattel Defendants arising out of the same conduct alleged in the complaints against the RC2 Defendants and are premised on the same core allegations -- that defendants negligently designed, manufactured, distributed, marketed and/or sold toy products that contain lead. If the Panel decides to transfer the actions against the Mattel Defendants to the Central District of California, which it should, for the same reasons set forth above (*i.e.*, the Central District of California is the location of the ports where the Recalled Mattel Toys arrived from China; the Central District of California is the most accessible location in the United States to China; and Mattel is headquartered in the Central District of California where relevant documents and witnesses will be located),[15] the Panel should consolidate and transfer both litigations in the Central District of California, under one Judge, who will preside over all litigations involving toys contaminated by lead and manufactured in China – a Lead Paint Litigation.

---

[15] Since Mattel is headquartered in El Segundo, California, where the Recalled Mattel Toys were marketed and distributed, many witnesses and documents will therefore be located in El Segundo. The Panel has consistently recognized that an appropriate transferee district for class action litigation is generally the district in where documents and witnesses will be located. *See e.g., In re Live Concert Antitrust Litig.*, 429 F. Supp. 2d at 1363 (transferring action to Central District of California since the district is "likely to provide a substantial number of witnesses and documents" as it is the district where defendant is headquartered); *In re American Honda Mort Co., Inc. Oil Filter Prods. Liab. Litig.*, 416 F. Supp. 2d 1368, 1369 (J.P.M.L. 2006) (transferring action to Central District of California since defendant's principal place of business is located in the district and relevant documents and witnesses are likely located there); *In re Reformulated Gasoline (RFG) Antitrust & Patent Litig.*, 370 F. Supp. 2d at 1359 (transferring to the Central District of California since defendant "is headquartered within this district and documents and witnesses will likely be found there").

## IV. CONCLUSION

For all the reasons set forth above, plaintiff Deke respectfully requests that the Panel transfer the cases against the RC2 Defendants for coordinated pretrial proceedings to the Central District of California.

DATED:   September 18, 2007

Respectfully submitted,

WHATLEY DRAKE & KALLAS, LLC

By: _____
Joe R. Whatley
WHATLEY DRAKE & KALLAS, LLC
1540 Broadway, 37th Floor
New York, New York 10036
Telephone: (212) 447-7070
Facsimile: (212) 447-7077

Nicholas B. Roth
EYSTER KEY TUBB ROTH, MIDDLETON
& ADAMS LLP
Eyster Building
P.O. Box 1607
Decatur, Alabama 35602
Telephone: (256) 353-6761
Facsimile: (256) 353-6767

Robert M. Foote
FOOTE, MEYERS, MIELKE & FLOWERS, LLC
28 North First Street, Suite 2
Geneva, Illinois 60134
Telephone: (630) 232-6333
Facsimile: (630) 845-8982

*Attorneys for Plaintiff Jennifer Foshee Deke as mother and next friend of Parker Hayden Deke and Connor William Deke*

Before the Judicial Panel on Multidistrict Litigation
MDL- No. 1893
IN RE RC2 Corp. Toy Lead Paint Products Liability Litigation

### SCHEDULE OF ACTIONS

| Court and Case Caption | District | Civil Action Number | Date Filed | Judge |
|---|---|---|---|---|
| James Weldon Stratton and Christa Marie Stratton v. RC2 Corporation, Racing Champions Ertl Corporation, Learning Curve Brands Inc. | E.D. Arkansas (Little Rock) | 4:07-cv-00640 | 7/20/2007 | Hon. James M. Moody |
| Abel Martinez v. RC2 Corporation | C.D. California (Los Angeles) | 2:07-cv-05401 | 8/17/2007 | Hon. A. Howard Matz |
| Brenda M. Singer v. Learning Curve Brands, Inc. and Learning Curve Brands, Inc. d/b/a RC2 Brands, Inc. | S.D Florida (Miami) | 1:07-cv-22271 | 8/30/2007 | Hon. Alan S. Gold |
| Channing Hesse v. Learning Curve Brands, Inc. and Learning Curve Brands, Inc. d/b/a RC2 Brands, Inc. | N.D. Illinois (Chicago) | 1:07-cv-03514 | 6/22/2007 | Reassigned to: Hon. Harry D. Leinenweber |
| Jennifer Foshee Deke v. RC2 Corporation, Learning Curve Brands, Inc. and Learning Curve Brands, Inc. d/b/a RC2 Brands Inc. | N.D. Illinois (Chicago) | 1:07-cv-03609 | 6/27/2007 | Reassigned to: Hon. Harry D. Leinenweber |
| Kimm Walton v. RC2 Corporation and Learning Curve Brands, Inc. | N.D. Illinois (Chicago) | 1:07-cv-03614 | 6/27/2007 | Reassigned to: Hon. Harry D. Leinenweber |
| John O'Leary and Christine Waller v. Learning Curve Brands, Inc. and RC2 Brands, Inc. | N.D. Illinois (Chicago) | 1:07-cv-03682 | 6/29/2007 | Reassigned to: Hon. Harry D. Leinenweber |

| Court and Case Caption | District | Civil Action Number | Date Filed | Judge |
|---|---|---|---|---|
| Paul Djurisic<br><br>v.<br><br>Apax Partners, Inc., Hit Entertainment, RC2 Corporation, and Learning Curve Brands, Inc. | N.D. Illinois (Chicago) | 1:07-cv-03707 | 7/2/2007 | Reassigned to: Hon. Harry D. Leinenweber |
| Theresa Reddell and Rebekah Lockhart<br>v.<br>Learning Curve Brands, Inc. and Learning Curve Brands, Inc. d/b/a RC2 Brands, Inc. | N.D. Illinois (Chicago) | 1:07-cv-03747 | 7/3/2007 | Reassigned to: Hon. Harry D. Leinenweber |
| Nicholas Rohde, Robyne Rohde, Austin Rohde, Christopher Brady and Tom Brady<br>v.<br>Learning Curve Brands, Inc., RC2 Corporation and Learning Curve International, Inc. | N.D. Illinois (Chicago) | 1:07-cv-04187 | 7/25/2007 | Reassigned to: Hon. Harry D. Leinenweber |
| Ryan R. Kreiner, Claudine M. Kreiner, Caryn Hudspeth, Patrick Hudspeth<br>v.<br>RC2 Corporation, Racing Champions Ertl Corporation, Learning Curve Brands, Inc., Racing Champions Ertl, Inc., RC Ertl, Inc. and RC2 Brands, Inc. | N.D. Illinois (Chicago) | 1:07-cv-04547 | 8/13/2007 | Reassigned to: Hon. Harry D. Leinenweber |
| Cherise Wilson, Aive Rei-Ghafoor, Tonya Tubbs, Thomas Toms, Tracy Hofmann, Sheree Argiris, and Cheng Yin<br>v.<br>Learning Curve Brands, Inc. and Learning Curve Brands, Inc. d/b/a RC2 Brands, Inc. | N.D. Illinois (Chicago) | 1:07-cv-04642 | 8/17/2007 | Reassigned to: Hon. Harry D. Leinenweber |

| Court and Case Caption | District | Civil Action Number | Date Filed | Judge |
|---|---|---|---|---|
| Chad J. Sweeney, Gregg Theobald, Shay Theobald, Robert Miller, Rachel Miller v. RC2 Corporation, Racing Champions ERTL Corporation, and Learning Curve Brands, Inc. | S.D. Indiana (Indianapolis) | 1:07-cv-00772 | 6/15/2007 | Hon. Larry J. McKinney |
| David Murdock v. RC2 Corporation, Learning Curve Brands, Inc., Wal-Mart Stores, Inc. and Toys "R" Us, Inc. | U.S.D.C New Jersey (Newark) | 2:07-cv-03376 | 7/20/2007 | Hon. William H. Walls |
| C. Kelly v. RC2 Corporation | E.D. New York (Brooklyn) | 1:07-cv-02525 | 6/22/2007 | Hon. Frederic Block |

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

In Re RC2 Corp. Toy Lead Paint        MDL Docket No. 1893
Products Liability Litigation
_____/

PROOF OF SERVICE

I hereby certify that a copy of the following documents were served by

FEDERAL EXPRESS on September 18, 2007 to counsel in the attached *Panel Attorney Service List* as well as the counsel listed below:

1. Response of Plaintiff Jennifer Foshee Deke to Plaintiff Abel Martinez's Motion for Transfer and Consolidation to the Central District of California pursuant to 28 U.S.C § 1407;

2. Response of Plaintiff Jennifer Foshee Deke to RC2 Corp. and Learning Curve Brands, Inc.'s Motion for Transfer and Consolidation to the Northern District of Illinois pursuant to 28 U.S.C § 1407;

3. Memorandum of Plaintiff Jennifer Foshee Deke in Response to RC2 Corp. and Learning Curve Brands, Inc.'s Motion for Transfer and Consolidation to the Northern District of Illinois and in Response to Plaintiff Abel Martinez's Motion for Transfer and Consolidation to the Central District of California;

4. Schedule of Actions; and

     5.     Proof of Service.

September 18, 2007

_Elizabeth Rosenberg_
Elizabeth Rosenberg

Lance A. Harke, P.A.
Harke & Clasby LLP
155 South Miami Ave. Suite 600
Miami, FL 33130
Telephone: (305) 536-8220
Facsimile: (305) 536-8229
lharke@harkeclasby.com

**Counsel for Plaintiff** Brenda Maya Singer,
Southern District of Florida, 07-cv-22271

**Judicial Panel on Multidistrict Litigation - Panel Attorney Service List**                                              Page 1

Docket: 1893 - IN RE: RC2 Corp. Toy Lead Paint Products Liability Litigation
Status:  Pending on / /
Transferee District:        Judge:

Printed on 09/10/2007

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Balestriere, John<br>Balestriere, P.L.L.C.<br>225 Broadway<br>Suite 2700<br>New York, NY 10007 | => Phone: (212) 374-5400  Fax: (212) 661-8665<br>Kelly, C. |
| Fegan, Elizabeth A.<br>Hagens Berman Sobol Shapiro, LLP<br>820 North Boulevard<br>Suite B<br>Oak Park, IL 60301 | => Phone: (708) 776-5604  Fax: (708) 776-5601  Email: beth@hbsslaw.com<br>Argiris, Sheree*; Hesse, Channing*; Hofmann, Tracy*; Lockhart, Rebekah*; O'Leary, John*; Reddell, Theresa*; Rei-Ghafoor, Aive*; Toms, Thomas*; Tubbs, Tonya*; Waller, Christine*; Wilson, Cherise*; Yin, Cheng* |
| Ferlauto, Thomas M.<br>King & Ferlauto, LLP<br>1880 Century Park East<br>Suite 820<br>Los Angeles, CA 90067-1627 | => Phone: (310) 552-3366  Fax: (310) 552-3289  Email: tmf@kingferlauto.com<br>Martinez, Abel* |
| Fox, Frederic S.<br>Kaplan Fox & Kilsheimer, LLP<br>805 Third Avenue<br>22nd Floor<br>New York, NY 10022 | => Phone: (212) 687-1980  Fax: (212) 687-7714  Email: ffox@kaplanfox.com<br>Walton, Kimm* |
| Murphy, Bart Thomas<br>Ice Miller, LLP<br>2300 Cabot Drive<br>Suite 455<br>Lisle, IL 60532 | => Phone: (630) 955-0555  Fax: (630) 955-4271  Email: bart.murphy@icemiller.com<br>Learning Curve International, Inc.* |
| Okenfuss, Judy S.<br>Ice Miller, LLP<br>One American Square<br>Suite 3100<br>P.O. Box 82001<br>Indianapolis, IN 46282-0200 | => Phone: (317) 236-2115  Fax: (317) 236-2219  Email: judy.okenfuss@icemiller.com<br>Learning Curve Brands, Inc.*; Learning Curve Brands, Inc. fdba The Ertl Co., Inc.; Learning Curve Brands, Inc. fka RC2 Brands, Inc.*; Racing Champions Ertl Corp.; Racing Champions Ertl, Inc.; RC Ertl, Inc; RC2 Brands, Inc.*; RC2 Corp.*; RC2 Corp. fka RC2 Brands, Inc.*; Toys "R" Us, Inc.* |
| Ostolaza, Yvette<br>Weil, Gotshal & Manges LLP<br>200 Crescent Court<br>Suite 300<br>Dallas, TX 75201 | => Phone: (214) 746-7700<br>Apax Partners, Inc.; Hit Entertainment |
| Pavich, Robert J.<br>Monico, Pavich & Spevack<br>20 South Clark STreet<br>Suite 700<br>Chicago, IL 60603 | =><br>Djurisic (Father & Next Friend-L.D. & N.D.), Paul |

Note: Please refer to the report title page for complete report scope and key.

*(Panel Attorney Service List for MDL 1,893 Continued)*

Page 2

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Reise, Jack<br>Coughlin Stoia Geller Rudman & Robbins, LLP<br>120 East Palmetto Park Road<br>Suite 500<br>Boca Raton, FL 33432-4809 | => Phone: (561) 750-3000  Fax: (561) 750-3364  Email: jreise@csgrr.com<br>Murdock (Ind./Father/Next Friend-Beau Farish & Anabelle Sage, minors), David* |
| Riley, William N.<br>Price, Waicukauski & Riley, LLC<br>The Hammond Block Building<br>301 Massachusetts Avenue<br>Indianapolis, IN 46204 | => Phone: (317) 633-8787  Fax: (317) 633-8797  Email: wriley@price-law.com<br>Hudspeth (Ind./Behalf/Next Friends T.H.H. & A.L.H), Caryn*; Hudspeth, Patrick*; Kreiner (Ind./Behalf/Next Friend G.H.K., B.D.K. & C.J.K), Claudine M.*; Kreiner, Ryan R.*; Miller, Rachel*; Miller, Robert*; Sweeney, Chad J.*; Theobald, Gregg*; Theobald, Shay* |
| Streett, James A.<br>Streett Law Firm, PA<br>107 West Main Street<br>Russellville, AR 72801 | => Phone: (479) 968-2030  Fax: (479) 968-6253  Email: James@StreettLaw.com<br>Stratton (Ind./Parents/Natural Guardians & Next Friends-E.J.S. & M.M.S.), Christa Marie*; Stratton (Ind./Parents/Natural Guardians & Next Friends-E.J.S. & M.M.S.), James Weldon* |
| Wal-Mart Stores, Inc.,<br>702 S.W. 8th Street<br>Bentonville, AR 72716 | =><br>Wal-Mart Stores, Inc. |
| Whatley, Jr., Joe R.<br>Whatley Drake & Kallas, LLC<br>1540 Broadway<br>37th Floor<br>New York, NY 10036 | => Phone: (212) 447-7070  Fax: (212) 447-7077  Email: jwhatley@wdklaw.com<br>Deke (Ind./Mother/Next Friend-Parker Hayden & Connor William), Jennifer Foshee* |
| Zimmerman, Jr., Thomas A.<br>Zimmerman & Associates, P.C.<br>100 West Monroe<br>Suite 1300<br>Chicago, IL 60603 | => Phone: (312) 440-0020  Fax: (312) 440-4180  Email: tom@attorneyzim.com<br>Brady (Next Friend-Tom), Christopher*; Brady, Tom*; Rohde (Next Friend-Robyne), Austin*; Rohde (Next Friend-Robyne), Nicholas*; Rohde, Robyne* |

Note: Please refer to the report title page for complete report scope and key.